324 A.2d 338.

Joseph E. Gonsalves *vs.* Francis A. Howard, *Warden.*

AUGUST 2, 1974.

Present: Paolino, Joslin, Kelleher and Doris, JJ.

Joslin, J. On December 13, 1972, Joseph E. Gonsalves filed this pro se petition for a writ of habeas corpus. Because Gonsalves can neither read nor write English, the petition was prepared for him by a fellow inmate. In it, Gonsalves challenges the legality of his detention under

a Superior Court order entered late in 1971 revoking his probation and committing him to the Adult Correctional Institutions to serve a 10-year sentence previously imposed. We requested the Public Defender's department to provide him with legal representation, and we ordered the writ to issue. *Gonsalves* v. *Howard,* 111 R. I. 914, 301 A.2d 577 (1973).[1] Subsequently, Gonsalves objected to that department's alleged incompetent representation of him, and we appointed a former chairman of the Rhode Island Board of Bar Examiners to act as his counsel.

On January 7, 1970, Gonsalves appeared before a Superior Court justice to answer to six indictments, three of which need not be discussed. Of the remaining three indictments, one charged him with assault with a dangerous weapon, a second with entering a dwelling with intent to commit larceny, and the third with rape. He pleaded nolo contendere to each of the three indictments and was sentenced to serve concurrent terms of imprisonment of three years each on the first two. In addition, a term of 10 years was imposed on the rape indictment, but execution of that sentence was suspended, and he was placed on probation for 10 years.

Prior to the expiration of the three-year concurrent terms, he was released on parole, and on August 24, 1971, while so at large, he allegedly committed another rape. He was thereupon brought before the Superior Court for a revocation hearing based upon that offense, and was also indicted for rape and for assault with a dangerous weapon. The revocation hearing preceded the criminal trial on the indictments, and on September 14, 1971, he was adjudged

---

[1] The violation hearing here preceded our decision in *Charest* v. *Howard,* 109 R. I. 360, 285 A.2d 381 (1972), where we held that the appropriate vehicle for seeking review in this court of a claimed error in revocation proceedings is an appeal. Thus, the petition here is proper. *Andrews* v. *Howard,* 111 R. I. 727, 306 A.2d 835 (1973).

a violator of the terms and conditions of his probation, the 10-year suspension of sentence previously imposed was revoked, and he was committed to the Adult Correctional Institutions to serve that sentence. The criminal trial on the indictments, however, resulted in not guilty verdicts on May 23, 1973.[2]

Gonsalves now contends that his probation period did not begin until the three-year concurrent sentences had expired, and that the Superior Court had no jurisdiction to entertain a revocation proceeding arising out of acts committed prior to the commencement of that period.

Under G. L. 1956 (1969 Reenactment) §12-19-8, a defendant appearing for sentence may be placed on probation for such time and on such conditions as the sentencing justice deems appropriate. That grant of authority is certainly broad enough to permit the fixing of the time when probationary status shall commence. The crux of Gonsalves' challenge, therefore, is what the sentencing justice intended concerning the commencement of the probationary period. *Pelliccia* v. *Sharkey,* 110 R. I. 319, 292 A.2d 862 (1972).

The record of that sentence is as follows:

"On 69-780, the rape charge, 10 years at the Adult Correctional Institutions. I'll suspend the execution of the sentence, place him on 10 years probation and *this sentence will be consecutive to the ones previously imposed and will commence upon his discharge from the Adult Correctional Institutions for the sentences previously imposed."* (emphasis added)

Gonsalves contends that the italicized language of that sentence demonstrates an intention that his probation not

---

[2]Notwithstanding Gonsalves' vague and indefinite complaints that he received inadequate representation from the Public Defender's department, it was a member of that department who presented his successful defense at this trial.

commence until the termination of the three-year concurrent sentences.[3] The state disputes that construction and argues that probation began when the jailhouse doors opened to release Gonsalves on parole. In our judgment, however, a preferable construction to either of those is that the pertinent language is without significance to the starting date of the probationary term, but is instead directed solely to the order in which the sentences imposed shall be served.

Indeed, when that language is read contextually with what precedes, it seems clear that what the trial justice did was to (1) sentence Gonsalves to serve a term of 10 years, (2) suspend the execution of that sentence, (3) place him on probation for 10 years, and (4) prescribe that the suspended 10-year sentence, if revoked while Gonsalves was serving the three-year terms, should be served consecutively to, rather than concurrently with, those terms. We have, then, a situation in which the trial justice did not clearly fix a future date for the commencement of Gonsalves' probationary term, and in that circumstance we follow the rule that it started when the judgment placing him on probation was rendered. *Engle* v. *United States*, 332 F.2d 88 (6th Cir.), *cert. denied,* 379 U. S. 903, 85 S.Ct. 192, 13 L.Ed.2d 176 (1964); *Gaddis* v. *United States,* 280 F.2d 334 (6th Cir. 1960); *United*

---

[3]The docket entry in this proceeding discloses that the clerk's construction of what transpired differs from Gonsalves' and ours. It reads as follows:

"Deft. appears and retracts plea of not guilty again arraigned pleads nolo contendere and sentenced to A.C.I. for 10 yrs., sentence suspended, probation for 10 yrs., from and after the expiration of sentence now being served * * *."

Gonsalves does not argue that the docket entry controls. Had he done so, we would say that what controls here is the undisputed transcript of the sentencing. *See Brady* v. *Langlois,* 104 R. I. 301, 307, 243 A.2d 906, 909 (1968).

*States* v. *Rosenstreich,* 204 F.2d 321 (2d Cir. 1953); *James* v. *United States,* 140 F.2d 392 (5th Cir. 1944); *Sanford* v. *King,* 136 F.2d 106, 108 (5th Cir. 1943). Thus, Gonsalves was under probation when the incidents giving rise to the revocation occurred, and the Superior Court did not exceed its jurisdiction when it entertained the revocation proceeding.

Gonsalves also contends in his brief and oral argument that at his revocation hearing he was forced to make an unconstitutional choice between not taking the stand and thereby sacrificing due process rights, or taking the stand in his own defense and thereby disclosing evidence which might be used against him in the criminal trial to follow.

The identical contention was rejected in *Flint* v. *Howard,* 110 R. I. 223, 291 A.2d 625, *cert. denied,* 409 U. S. 1078, 93 S.Ct. 694, 34 L.Ed.2d 667 (1972). More recently it was repudiated by the United States Court of Appeals for the First Circuit. That court held that a use immunity for statements Flint might have made in his own defense was not one of the rights constitutionally guaranteed him at a deferred sentence revocation hearing which preceded the criminal trial based upon the same incident. *Flint* v. *Mullen,* 499 F.2d 100 (1st Cir. 1974).[4]

Finally, there are contentions concerning the adequacy of the revocation hearing.[5] They do not require extended discussion. Whether Gonsalves should have been violated

---

[4]That case reversed *Flint* v. *Mullen,* 372 F.Supp. 213 (D.R.I. 1973), which had found error in *Flint* v. *Howard,* 110 R. I. 223, 291 A.2d 625 (1972). The difference in the titles of the proceedings is because James Mullen replaced Francis A. Howard as warden of the Adult Correctional Institutions.

[5]Gonsalves and his counsel filed separate briefs and both made oral arguments. Counsel's contentions were directed solely to the issues hereafter considered, and Gonsalves' to those previously discussed and to various others so obviously lacking in merit as to warrant no discussion.

hinges on whether the trial justice was reasonably satisfied that he had committed the alleged offense. *State* v. *Bettencourt,* 112 R. I. 706, 315 A.2d 53 (1974), and cases cited therein at n. 3. That question is entirely one of credibility. The trial justice accepted as truthful the complaining witness' testimony that she had been raped by Gonsalves, and rejected as incredible his denial. We are not persuaded that he acted either arbitrarily or capriciously in so resolving that evidentiary conflict, and we are therefore precluded from disturbing his findings. *State* v. *Bettencourt, supra* at 709, 315 A.2d at 54; *Flint* v. *Howard, supra* at 236-37, 291 A.2d at 631-32; *Charest* v. *Howard,* 109 R. I. 360, 370, 285 A.2d 381, 386 (1972).

Gonsalves also attacks the asserted fundamental unfairness of being required to serve the term of 10 years because of later offenses which a jury of his peers found he did not commit. That argument is by no means novel. Until there is a legislative or administrative change in the state's policy, however — as suggested in *State* v. *Bettencourt, supra,* at nn. 6 & 7 — we are not compelled to depart from the rules which presently prevail in matters of this kind and which permitted Gonsalves to be adjudged a violator of his probation and later to be acquitted at his criminal trial, where the state was required to meet a higher burden of proof.

The petition for habeas corpus is denied and dismissed, and the writ heretofore issued is quashed.

Mr. Chief Justice Roberts did not participate.

*Edwin H. Hastings,* for petitioner.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, for respondent.