402 A.2d 1185.

STATE *vs.* ROBERT L. STUDMAN.

JULY 2, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

DORIS, J.   In 1974 the grand jury returned an indictment against the defendant, Robert L. Studman, charging him with assaulting a correctional officer while confined at the Adult Correctional Institutions (ACI). The defendant pleaded nolo contendere and on February 9, 1976, he was sentenced to two years in the ACI. Execution of the sentence

was suspended and the defendant was placed on two years' probation. On August 7, 1976, the defendant allegedly robbed an employee of the Dutchland Farms store in Providence. As a result of the charge of robbery against the defendant, a violation hearing was held in the Superior Court and on September 14, 1976, the trial justice found that the defendant was a violator of the terms and conditions of his probation. The suspension of sentence was revoked and the defendant was committed to the ACI to serve his two-year sentence. Although the record does not so indicate, both the prosecution and the defendant state that a jury subsequently acquitted the defendant of the underlying robbery charge. The defendant has appealed the trial justice's order violating him, contending that it constituted an abuse of discretion. For the reasons stated herein, we affirm the trial justice's order.

If a person at liberty on a suspended sentence has not complied with the terms of his probation, it is within the discretion of the court to vacate the suspension. *See Tillinghast* v. *Howard*, 109 R.I. 497, 501-02, 287 A.2d 749, 752 (1972). At the violation hearing the state is not required to prove the violation beyond a reasonable doubt. Rather, the trial justice need only be reasonably satisfied that there has been a violation. *Gonsalves* v. *Howard*, 113 R.I. 544, 548-49, 324 A.2d 338, 341 (1974); *State* v. *Bettencourt*, 112 R.I. 706, 709, 315 A.2d 53, 55 (1974); *Walker* v. *Langlois*, 104 R.I. 274, 282, 243 A.2d 733, 737 (1968). Accordingly, acquittal on the underlying offense does not automatically preclude a violation. *See Andrews* v. *Howard*, 111 R.I. 727, 729, 306 A.2d 835, 836 (1973). Furthermore, our review of the trial justice's decision to violate defendant is limited to a consideration of whether or not the justice acted arbitrarily or capriciously. *E.g., Gonsalves* v. *Howard*, 113 R.I. at 549, 324 A.2d at 341; *Andrews* v. *Howard*, 111 R.I. at 729, 306 A.2d at 836; *Flint* v. *Howard*, 110 R.I. 223, 231, 291 A.2d 625, 629 (1972); *Charest* v. *Howard*, 109 R.I. 360, 366, 285 A.2d 381, 384 (1972); *Tillinghast* v. *Howard*, 109 R.I. at 502, 287 A.2d at 752; *Walker* v. *Langlois*, 104 R.I. at 282-83, 243 A.2d at 737-38.

Essentially, defendant argues that the evidence presented by the state at the violation hearing was so sparse and inconsistent that the conclusion of the revoking justice was clearly arbitrary.

The sole prosecution witness at the violation hearing was the victim of the alleged robbery. She testified that on the afternoon of August 7, 1976, she was working in the Dutchland Farms store on Broad Street in Providence. At approximately 3:30 p.m. two men entered the store. One of them struck her in the mouth and forced her into a back room, and then both proceeded to rob the store. One week later the victim identified defendant at a lineup as one of her assailants. She also made an in-court identification of defendant at the violation hearing. The defendant argues that the victim's identification of him, which was absolutely pivotal to the state's case, was so fatally flawed in four respects that the trial justice could not have been reasonably satisfied that defendant committed the offense.

The defendant grounds his argument upon the following alleged inconsistencies in the victim's testimony. First, the victim testified she was certain defendant was one of the robbers because she had seen him in the store on at least six prior occasions between January and July 1976. Uncontradicted evidence, however, indicated that defendant was incarcerated until June 9, 1976, when he was paroled. Second, the victim stated that at two separate times the police showed her slides and photographs of possible suspects, but she was unable to make a positive identification. A police officer testified, however, that the victim had tentatively identified defendant from these pictures. Third, the testimony was extremely contradictory concerning whether defendant had a beard on the date of the alleged robbery and on the date of the lineup. On direct examination the victim stated that every time she saw defendant he had a beard. The defendant testified that he never had a beard, and a member of the Attorney General's department testified that he had never seen defendant with a beard. The victim claimed that when the police initially questoned her about

the incident, she told them one of the assailants had a slight beard. The police report simply indicated she described one individual as having a beard, without modification. The victim further testified that defendant had a beard when she identified him at the lineup. On recross-examination she modified her description to a "slight" beard. A guard at the ACI testified that on the date of the lineup, defendant did not have a beard. A photograph of the lineup revealed that defendant had at most a "little fuzz," rather than a full-grown beard.

The defendant's fourth point concerns the lineup identification itself. Sergeant LeBoeuf of the Providence police department supervised the lineup. He testified that the four lineup participants were numbered one to four, proceeding from left to right. The defendant was number four, on the extreme right. The victim first identified number one as the robber. LeBoeuf then repeated to her that the order was one to four, left to right. She then looked at number four, defendant, but stated number one. LeBoeuf then asked her to point to the person whe was referring to, and she pointed at defendant. When the numerical order was reiterated for a third time, she identified number four. Another police officer who witnessed the lineup corroborated LeBoeuf's version. The lineup report simply stated that the victim identified number four. The state contends that the victim was merely confused about the numerical order of the lineup participants. The defendant argues that the victim failed to identify him adequately at the lineup.

The defendant contends that when these evidentiary shortcomings are viewed together, the state's case had such minimal probative value that the trail justice's decision finding the defendant in violation of the terms and conditions of his probation was an arbitrary action. It is obvious, however, that the issue confronting the trial justice was purely one of credibility. In his decision, the trial justice examined at length the apparent inconsistencies in the victim's testimony. He nevertheless concluded that the victim's identification of the defendant was trustworthy.

Weighing evidence and assessing the credibility of witnesses are the functions of the trial court. *See, e.g., State* v. *Chatell,* No. 77-259-C.A. (R.I., filed May 9, 1979); *Raheb* v. *Lamenski,* 115 R.I. 576, 579, 350 A.2d 397, 399 (1976); *Fournier* v. *Ward,* 111 R.I. 467, 472, 306 A.2d 802, 805 (1973). This court, with only a barren record before it rather than the flesh and blood of live witnesses, cannot possibly evaluate credibility. Accordingly, we hold that the trial justice did not act arbitrarily in resolving the evidentiary conflict posed at the hearing.

The defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court for further proceedings.

*Dennis J. Roberts,* Attorney General, *Frederick C.B. Smyth,* Special Assistant Attorney General, for plaintiff.

*DeCaporale & Cicilline, Joseph L. DeCaporale, Jr.,* for defendant.