### James J. WHITMAN

v.

**Donald R. VENTETUOLO, Acting Director of the Department of Corrections, Adult Correctional Institutions for the State of Rhode Island.**

**Civ. A. No. 90–0590–T.**

United States District Court,
D. Rhode Island.

Dec. 10, 1991.

---

Arthur E. Chatfield, III, Providence, R.I. for plaintiff.

Jane M. McSoley, Office of the Atty. Gen., Providence, R.I., for defendant.

## MEMORANDUM AND ORDER

TORRES, District Judge.

This is a habeas corpus petition in which James Whitman challenges the validity of a deferred sentence imposed by the Rhode Island Superior Court on August 8, 1985. It is presently before the Court for consideration of a Magistrate Judge's Findings and Recommendation that the State's motion to dismiss pursuant to 28 U.S.C. § 2254(b) for failure to exhaust state remedies be denied. For reasons hereinafter stated, this Court rejects that recommendation and dismisses the petition.

## BACKGROUND

It should be noted, at the outset, that Whitman, through his counsel, has represented to the Magistrate Judge and the Court that the sentence at issue is the only reason Whitman is presently incarcerated. However, the record reveals that representation to be false. It shows that on August 16, 1979, Whitman was convicted by a state court jury of five counts of committing abominable and detestable crimes against nature. On January 14, 1980, the trial judge imposed concurrent sentences of 10 years each on three of the counts (the "original sentences"). In each case, five years of the sentence was suspended subject to Whitman's satisfactory completion of a five year probationary period beginning upon his release from prison. Sentence on the two remaining counts (i.e. Counts 3 and 5) was deferred pursuant to R.I.Gen.Laws § 12–19–19.[1] In accordance with the provisions of that statute, Whitman and the Rhode Island Attorney General executed a written agreement setting forth the terms upon which sentence was being deferred. One of those terms was that Whitman would be of good behavior.

On August 10, 1984, Whitman was paroled. Several months later, he was indicted on two counts of first degree child molestation and three counts of second degree child molestation. The new charges were the subject of a parole violation hearing on June 19, 1985. Based on the evidence presented at that hearing, the trial judge declared himself reasonably satisfied that Whitman was a parole violator and required him to serve the suspended five year portions of the "original sentences."

On August 8, 1985, an additional hearing was held at which it was determined that Whitman also had violated the conditions upon which the sentences on Counts 3 and 5 had been deferred. As a result, Whitman was given sentences of fifteen years on each count (the "deferred sentences") which were made concurrent with each other and concurrent with the "original sentences."

On September 3, 1985, Whitman pled guilty to the child molestation charges and was sentenced to concurrent terms of 24 years, 6 months on each of the first degree counts and 15 years on each of the second degree counts. Shortly thereafter, Whitman received consecutive two year sentences for attempted escape from prison and for breaking and entering. Therefore, contrary to the aforesaid representations, Mr. Whitman has approximately 22½ years remaining on sentences unrelated to those that are the subject of this petition.

In any event, Whitman did not appeal the August 8, 1985 "deferred sentences." Instead, in July, 1986, he filed a petition for post-conviction relief in the Rhode Island Superior Court. After numerous motions and requests for continuances by both sides, that proceeding has remained dormant since December, 1989. While each party blames the other for the delay, Whitman cites it as evidence of the "futility" of seeking a remedy in state court. Accordingly, he contends that the exhaustion requirement should not preclude consideration by this Court of his challenge to the constitutionality of the "deferred sentences."

The two assertions Whitman makes in support of that challenge are that he did not have effective assistance of counsel in connection with the August 8, 1985, hearing and that the Superior Court lacked jurisdiction to impose the "deferred sen-

---

1. The text of the statute is set forth *infra*.

tences" because the time for doing so had expired.

## DISCUSSION

### I. Exhaustion and the Futility Doctrine

■ Before reaching Whitman's substantive arguments, the Court must consider whether he has exhausted all available state court remedies as required by 28 U.S.C. § 2254. *Duckworth v. Serrano,* 454 U.S. 1, 2, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981) (per curiam); *Martens v. Shannon,* 836 F.2d 715, 718 (1st Cir.1988). The exhaustion requirement is rooted in considerations of comity and is predicated on the notion that state courts should have an opportunity to correct their alleged constitutional violations before federal jurisdiction is invoked. *Mele v. Fitchburg District Court,* 850 F.2d 817, 819 (1st Cir.1988) (citing *Duckworth,* 454 U.S. at 2, 102 S.Ct. at 19). However, one need not exhaust available state court remedies when such efforts clearly would be futile. *See Duckworth,* 454 U.S. at 3–4, 102 S.Ct. at 20–21. One way in which "futility" may be established is by showing that relief has been diligently sought in the state courts but that those efforts have been frustrated by an inordinate delay on the state's part in hearing and resolving the petitioner's claim. *Odsen v. Moore,* 445 F.2d 806, 807 (1st Cir.1971).

■ In this case, it is clear that there has been a lengthy delay in resolving Whitman's claim for post-conviction relief. However, it is not at all clear that the state is responsible for that delay. As already noted, both sides have sought numerous continuances and each blames the other for the lack of progress. Furthermore, there is no indication that Whitman made any request for a hearing or other disposition in the state court before filing this habeas petition.

In addition, Whitman has failed to demonstrate that he may be prejudiced in any way by being required to pursue his state court remedies. Even if his challenge to the "deferred sentences" is successful, Whitman must continue serving the balance of the 28½ year sentences imposed as a result of other convictions. Therefore, there is no chance that he will be unlawfully deprived of his freedom during the relatively short time required for him to make a bona fide effort to prosecute his state court petition.

■ Consequently, Whitman has not made a showing sufficient to relieve him of the requirement that he exhaust his available state court remedies[2] or to warrant characterizing such efforts as "futile."

### II. Ineffective Assistance of Counsel

Even if it is assumed, *arguendo,* that the exhaustion requirement has been satisfied, Whitman's petition fails to state a claim on the merits. Whitman contends that his Sixth Amendment rights have been violated because the counsel representing him at the August 8, 1985, hearing did not provide him with effective assistance. There are two flaws in that argument.

■ First, in this case, it is not clear that Whitman had a right to counsel at his revocation hearing. In the case of parole revocation hearings, entitlement to counsel is a determination that must be made on a case-by-case basis. *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 1763, 36 L.Ed.2d 656 (1973). In *Gagnon* the Supreme Court stated that due process requires that a parolee be given counsel at a revocation hearing only where the parolee's request is

> based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate,

---

**2.** Exhaustion requires not only that he present his claim to the Superior Court but also that he appeal any adverse determination to the Rhode Island Supreme Court. *See Mele v. Fitchburg District Court,* 850 F.2d 817 (1st Cir.1988).

and that the reasons are complex or otherwise difficult to develop or present. *Gagnon*, 93 S.Ct. at 1764.

That test appears to be equally applicable to hearings regarding alleged violations of deferred sentencing agreements. The difficulties that Whitman would have in satisfying either part of the *Gagnon* test presents a serious obstacle to his claim.

■ More importantly, Whitman's claim of ineffective assistance falls far short of requirements established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In *Strickland*, the Supreme Court held that, in order to prevail on such a claim, a defendant must demonstrate that the representation he received "fell below an objective standard of reasonableness" and he must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694, 104 S.Ct. at 2065, 2068. It is not enough to show that there were errors that "had some conceivable effect on the outcome of the proceeding." *Id.* at 693, 104 S.Ct. at 2067.

In making the requisite showing, a defendant bears a heavy burden. Thus, in *Strickland*, the Court said:

Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'

*Strickland*, 466 U.S. at 689, 104 S.Ct. at 2066.

In this case, Whitman has failed to satisfy either prong of the *Strickland* test. He has produced nothing more than a single page of the August 8 transcript which shows that his counsel chose not to call any witnesses. However, he does not identify any witnesses that he claims should have been called or what their testimony would have been let alone the risks involved in having them testify. Consequently, he has fallen far short of demonstrating that his counsel's representation fell below an objective standard of reasonableness.

His failure to satisfy the second prong of the *Strickland* test is even more glaring. Whitman's petition is based on the unsupported assertion that the result of his deferred sentence hearing "may have been different" if his counsel had done a more effective job. However, he fails to explain the error his counsel is alleged to have made or how it would have altered the outcome. Furthermore, Whitman's contention is inconsistent with the fact that he later pled guilty to the very same child molestation charges that were the basis for imposing the "deferred sentences." Since the quantum of proof required to justify imposition of a deferred sentence is far less than that necessary to establish guilt, it is difficult to see how even flawless representation at the August 8 hearing would have affected the result of that hearing. *See State v. Studman*, 121 R.I. 766, 402 A.2d 1185 (1979).

In short, Whitman's allegations fail to satisfy either prong of the *Strickland* test and are insufficient to raise a "real possibility of constitutional error." *Aubut v. State of Maine*, 431 F.2d 688, 689 (1st Cir.1970).

### III. *Validity of Deferred Sentence*

■ The "deferred sentences" meted out on August 8, 1985, were imposed pursuant to R.I.Gen.Laws § 12–19–19. That section provides, in relevant part, as follows:

if at any time the court formally defers sentencing the defendant, and thereupon a written agreement concerning said deferring of sentence is entered into between the attorney-general and the prisoner, and filed with the clerk of said court, thereafter the court may only impose sentence within five (5) years from and after the date of said written agreement, unless during said period, such prisoner shall be sentenced to imprisonment in this or in any other state, in which event the court may impose sentence at any time within five (5) years from and after the termination of such

sentence of imprisonment, or unless at the time such sentence is formally deferred such prisoner shall be serving a term of imprisonment under sentence previously imposed in another case, in which event the court may impose sentence at any time within five (5) years from and after the date on which such prisoner is released from prison either on parole or at the termination of such sentence of imprisonment, whichever first occurs.

R.I.Gen.Laws § 12–19–19 (1981).

Whitman argues that the Superior Court lacked jurisdiction to sentence him because more than five years had elapsed since his January 14, 1980, agreement with the Attorney General. However, in so doing, he ignores that portion of the statute that tolls the five-year period while the defendant is serving a term of imprisonment. Obviously, the reason for the tolling provision is to ensure that the five-year period of good behavior required as part of the deferred sentence agreement applies only to time during which the defendant is at liberty. Giving a defendant credit for not committing crimes while imprisoned on another sentence would be inconsistent with the purpose of a deferred sentence agreement. *See Powers v. Langlois*, 90 R.I. 45, 48, 153 A.2d 535 (1959).

In this case, at the time the "deferred sentences" were imposed, Whitman had been imprisoned on the other sentences for nearly four of the five and one-half years that had elapsed after he entered into the deferred sentence agreement. Therefore, the sentencing judge very rationally could have concluded that, under the statute, the time limit for imposing the "deferred sentences" was tolled during those periods of incarceration.

■ Whitman apparently reads the statute differently, and, in effect, urges this Court to hold that such an interpretation is erroneous. However, in order to obtain habeas relief based upon a state court's interpretation of state law, the petitioner must do more than persuade a federal court that a different interpretation is possible or even preferable. The petitioner must establish that the state court's interpretation is so "plainly without basis in the underlying statute" that his federal Constitutional rights were violated. *Tarrant v. Ponte*, 751 F.2d 459, 464 (1st Cir.1985).

Whitman has made no such showing in this case. Nor should this Court assume that the trial judge's application of the Rhode Island statute was so unreasonable as to amount to a Constitutional violation. Such an assumption would be contrary to the First Circuit's admonition that "as a matter of comity, [the] federal courts will be slow to impute to a state court the lack of a principled basis for decision." *Id.* at 464.

### CONCLUSION

For all of the foregoing reasons, the Magistrate Judge's recommendation is rejected, and the petition for habeas corpus is denied and dismissed.

IT IS SO ORDERED.