STATE

v.

Timothy KENNEDY.

No. 94–653.

Supreme Court of Rhode Island.

Nov. 3, 1997.

Aaron L. Weisman, Andrea J. Mendes, Providence, for Plaintiff.

Paula Rosin, Janice M. Weisfeld, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

LEDERBERG, Justice.

This case came before the Supreme Court on the appeal of the defendant, Timothy Kennedy, from a Superior Court adjudication that he violated the terms of a previously imposed twenty-one-and-a-half-year suspended sentence and probationary period. The defendant argued that the hearing justice overlooked and misconceived the material evidence and that the resulting adjudication was arbitrary and capricious. For the reasons set forth below, we affirm the adjudication that the defendant violated the terms of his probation, and we affirm the reinstatement of the previously suspended sentence. The facts insofar as they are pertinent to this appeal follow.

### Facts and Procedural History

On January 28, 1992, judgments of conviction for robbery, carrying a pistol without a license, and entering a building with intent to commit robbery were entered in Superior Court, following defendant's plea of nolo contendere.[1] A sentence of thirty years was

---

1. On October 19, 1988, following a jury trial,     defendant was convicted of robbery, carrying a

imposed on the robbery conviction, with eight years and six months to serve at the Adult Correctional Institutions (ACI), retroactive to February 16, 1984, and twenty-one years and six months suspended, with twenty-one years and six months' probation. The defendant was subsequently released from incarceration, and his probationary period began.

The defendant was arrested on November 8, 1993, and on the next day was arraigned on the charge of robbery, in violation of G.L.1956 § 11–39–1(b). At the subsequent probation-revocation hearing in the Superior Court, the witnesses substantially disagreed about the events that led to defendant's arrest. The following summary describes the witnesses' testimony that was critical to the trial justice's analysis and to his conclusion that defendant had violated the terms of his probation.

The alleged victim, Suzanne Barber (Barber), testified that she entered a downtown Providence bar that she called The Seventeen Club at about 3:45 p.m. on November 8, 1993. The defendant sat at a stool near her and the two spoke "on and off" for fifteen to twenty minutes. Barber testified that she consumed three beers while in the bar, left at about 5:30 p.m., and did not feel the effects of the alcohol.

Barber further testified that as she walked away from the bar, "[s]omebody grabbed me from behind and broke the chain off my neck and demanded the money from my pocket." The assailant said, "Give me your money or I'll kill you." After turning around and seeing defendant, she gave him $78 from her jacket pocket, and, upon his demand, also gave him a gold bracelet she was wearing. The defendant then pushed her to the ground and ran away.

Following the robbery, Barber walked to nearby Downtown Liquors and asked the clerk to call the police, informing him that she had just been robbed. She testified that while the clerk was phoning the police, defen-

dant "bang[ed] on the window, yelling and screaming, saying if I called the police, he'd kill me." Providence Patrolman Robert Zabinski (Zabinski) responded to the reported robbery within "four or five minutes," and Barber gave him a description of her assailant that was broadcast by Zabinski via police radio. Barber described her assailant as a black male, approximately five feet seven inches in height, with a slight mustache and partial facial hair, wearing a waist-length maroon leather jacket and stone-washed jeans. Within ten minutes, Officer Wayne Mann (Mann) radioed that he had detained two individuals nearby. When Barber was brought by Zabinski to the scene of the detention, she saw defendant and another man, Ernest Kirkland (Kirkland), and immediately pointed to defendant, stating, "That's him." She had never seen Kirkland before.

The defendant, in contrast, testified that he is five feet eleven, and that he arrived at the bar, which he called Bar Seventeen, at about 4:30 p.m. on the day in question. Barber, whom he claimed he did not know, was in the bar, and some of the bar's patrons told him that "she's a dope dog, she is a cocaine alcoholic." A verbal altercation ensued between Barber and himself when Barber confronted him outside and accused him of owing her money for drugs. Following the altercation, defendant and Kirkland, who approached him and began "begging" for $5, walked to a nearby club. The two men left the club, walked past Downtown Liquors and a nearby bus · stop, and were detained by police. The defendant testified that, although he intended to board a bus at the stop to go to Amos House, a local shelter that required that he sign in by 5:30 p.m. or forfeit his bed, he entered the club and walked past the bus stop to evade Kirkland, who continued to ask him for money.

Defense witness Kirkland offered a different version of events. He testified that he

pistol without a license, and committing a crime of violence while armed. The charges stemmed from a 1984 indictment. After his motion for a new trial was denied on November 17, 1988, defendant filed an appeal. This Court held that the trial court's denial of defendant's unequivocal assertion of his right to proceed pro se prior

to the start of the trial constituted reversible error. Therefore, we sustained the appeal, reversed the judgment of conviction, and remanded the case to the Superior Court for a new trial. *State v. Kennedy*, 586 A.2d 1089, 1092 (R.I.1991). The defendant's January 1992 nolo plea followed.

arrived at Bar Seventeen at about 5:30 or 6 p.m., and that when he saw defendant seated at the bar, talking with Barber, he began "trying to get a loan" from defendant. Kirkland denied Barber's request to assist her in obtaining cocaine after somebody told him that Barber, who claimed she had lost money when a buyer failed to return with her drugs, was "trouble." A name-calling exchange occurred between defendant and Barber after Barber, who was "tipsy," confronted defendant outside the bar.

Kirkland and defendant then walked away, passed Downtown Liquors, and entered a corner bar, while Kirkland continued to ask defendant for money. The two remained at the second bar for about five minutes and at about 6:20 p.m. walked past the bus stop across the street from the liquor store. The defendant and Kirkland were then stopped by the police, and Kirkland was asked to empty his pockets before defendant was arrested.

Defense witness Walter Harris's (Harris) testimony was equivocal and contradictory. Harris testified that he arrived at Bar Seventeen with his cousin, Dino Monteiro (Monteiro), at approximately 4:30 p.m., and that Barber purchased three bags of cocaine from them in the men's rest room. Following these assertions, however, Harris proceeded to contradict his own proffered testimony by maintaining that he had not been in the rest room during the alleged drug transaction with Barber. He also stated both that he did not see defendant the entire evening and that he saw defendant get arrested that evening.

According to defense witness Vincent A. Kirwin, Jr. (Kirwin), the clerk at Downtown Liquors, the liquor store is "real small," with "a lot of windows." After Barber came into the store and asked him to call the police, stating that she had been robbed, Kirwin dialed 911, and summoned Barber to the phone to answer police questions. According to Kirwin, Barber, who "wasn't totally sober" and smelled of alcohol, reported on the phone that she had been robbed of $20. A customer then entered the store and, while Kirwin was waiting on the customer, Barber, still on the phone with the police, stated that her assailant had just walked by the store. Kir-

win was not looking out the window at the time and never heard either banging on the window or shouting. Within ten to twenty seconds of Barber's statement about having seen the assailant, Kirwin exited the store, looked around, and did not see defendant, whom he knew. After the phone conversation with the police ended, he asked Barber what had happened to her, and she said, "They took $20.00 out of my pocket," but said nothing about jewelry.

Officer Zabinski testified that, when he responded to the 911 call, Barber reported that she had been robbed of $78 and some jewelry. He broadcast Barber's description of defendant via police radio after she informed him that she had seen defendant heading east. According to Zabinski, Barber did not smell of alcohol.

Officer Mann testified that about four minutes after he heard the broadcast description, he spotted defendant and Kirkland, and detained them about one block west of the liquor store. The defendant was clean-shaven, and after Zabinski arrived with Barber and informed Mann that Barber had identified defendant as her assailant, Kirkland, who was wearing neither stone-washed jeans nor a leather jacket, was released without being searched.

Mann arrested defendant and transported him to the police station, where a custodial search yielded $28. No jewelry was found on defendant when he was searched, or near him when he was detained.

Among these contradictory and conflicting reports, the following testimony of the witnesses was uncontroverted. In October, 1988, Barber was convicted of falsely reporting a crime and obstructing a police officer and received a one-year suspended sentence and one year of probation. She had been addicted to cocaine, had stopped using the drug around February 1993, but experienced a relapse on September 29, 1993. In addition, defense counsel maintained that Barber's ongoing substance addiction treatment records indicated that she did not report for toxicology screening "for the three days surrounding this incident."

Following the probation revocation hearing, defendant was adjudged to have violated the terms of his probation, and the full twenty-one-year, six-month suspended sentence was reinstated. The defendant filed a timely appeal of the finding of violation, and subsequently, defendant's motions to vacate and reduce the reinstated sentence were denied.

Although defendant moved to hold the pre-briefing process in abeyance and filed a motion for extension of time in which to file a prebriefing statement, on September 19, 1996, he filed a waiver of his right to file a prebriefing statement and to participate in a prebriefing conference pursuant to Rule 16(i) of the Supreme Court Rules of Appellate Procedure,[2] and the case was assigned for full briefing and oral argument.

## Standard of Review

On appeal, this Court's review of a finding of violation of probation is "limited to a consideration of whether the trial justice acted arbitrarily or capriciously in finding a violation." *State v. Gilroy,* 688 A.2d 858, 859 (R.I.1997) (quoting *State v. Olsen,* 610 A.2d 1099, 1103 (R.I.1992)) (quoting *State v. Bourdeau,* 448 A.2d 1247, 1249 (R.I.1982)); *see also State v. Tatro,* 659 A.2d 106, 114 (R.I. 1995). In the instant case, we consider whether the hearing justice acted arbitrarily or capriciously in concluding that reasonably satisfactory evidence existed to support a finding that defendant, in the justice's words, "did rob Suzanne Barber of her money and her jewelry." [3]

## Burden of Proof

It is well settled that a probation revocation hearing is not part of the criminal prosecution process "and, thus, does not call for the full panoply of rights due a defendant in such a criminal proceeding." *Bourdeau,* 448 A.2d at 1248 (citing *Morrissey v. Brewer,* 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484, 494 (1972)). Moreover, the state need not prove a violation of probation beyond a reasonable doubt; rather, the violation need only be established by reasonably satisfactory evidence. *Gilroy,* 688 A.2d at 859 (citing *Olsen,* 610 A.2d at 1103); *State v. Casiano,* 667 A.2d 1233, 1237 (R.I.1995); *In re Lamarine,* 527 A.2d 1133, 1135 (R.I.1987). The sole purpose of a probation revocation hearing is to determine whether a condition of the probation has been breached. *State v. Johnson,* 651 A.2d 1225, 1225 (R.I.1994) (citing *Bourdeau,* 448 A.2d at 1248).

## Barber's Drug/Alcohol Use and Credibility

During the course of the probation-revocation hearing, defense counsel argued that "[i]f Ms. Barber were actually under the influence of drugs and alcohol at the time surrounding and during her visit to The Seventeen Club, that intoxication was relevant to her ability to perceive and recall the events testified to, and would reflect negatively on the credibility of her version of events." On appeal, defendant maintained that the hearing justice "overlooked and misconceived the

2. By order of this Court, dated April 4, 1997, subsections (h) and (i) of Rule 16 of the Supreme Court Rules of Appellate Procedure were deleted; pursuant to the order, the right to file a prebriefing statement and participate in a prebriefing conference is now governed by Rule 12A of the Supreme Court Rules of Appellate Procedure.

3. The conduct and the requirements of a hearing on whether a defendant has violated the terms of probation are set forth in G.L.1956 § 12–19–9, which provides, in pertinent part:

"**Violation of terms of probation—Notice to attorney general—Revocation or continuation of suspension.**—Whenever any person who shall have been placed on probation pursuant to § 12–9–8 [*sic*] shall violate the terms and conditions of his or her probation as fixed by the court, the police or the probation authority shall inform the attorney general of the violation, and the attorney general shall cause the defendant to appear before the court. * * * The court shall conduct a hearing to determine whether the defendant has violated the terms and conditions of his or her probation, at which hearing the defendant shall have the opportunity to be present and to respond. Upon a determination that the defendant has violated the terms and conditions of his or her probation the court, in open court and in the presence of the defendant, may remove the suspension and order the defendant committed on the sentence previously imposed, or on a lesser sentence, or impose a sentence if one has not been previously imposed, or may continue the suspension of a sentence previously imposed, as to the court may seem just and proper."

relevance of the evidence concerning Suzanne Barber's drug involvement at the time she made her complaint." Specifically, the defendant averred that "[t]he hearing justice consistently misconceived defense counsel's arguments as to the relevance of Ms. Barber's drug use at the time in question. He repeatedly made clear that he understood defense counsel to be arguing that a drug addict is legally incapable of being the victim of a robbery, despite counsel's attempts to set him straight."

Our review of the hearing transcripts reveals that the hearing justice did not misconceive the relevance of the evidence establishing substance abuse on the part of the complaining witness. After defendant's attempt to introduce records of Barber's drug and alcohol abuse as full exhibits, the trial justice made the following statements:

> "THE COURT: All right. I would have a great deal more trouble under Rule 404 with this if there were a jury listening. But because I can sort it out, if we find them, I'll take them and I'll consider them. I honestly believe a person can lie about one thing and tell a truth about another. You've already furnished me with a particular reason why a witness would lie about her cocaine usage but not about being robbed, since I understand robbery victims can get custody of their children more readily than people who take cocaine. I believe that. So if you can find those records, I will be happy to take a look at them, and I will receive them. And *since this is a credibility case*, there is, until witness Kirwin testified, and now there is some corroboration of the complaining witness, *unless she were so high that she didn't know what she was doing when she ran into the liquor store."* (Emphases added.)

Further, the hearing justice later declared:

> "If [the record of drug and alcohol abuse] shows her to be addicted, it makes Walter Harris' testimony more credible than hers. * * * I'll take the evidence, but it really looks more like an effort to impeach the credibility of this witness by evidence of prior misconduct or for bad character, which classically the rules of evidence don't

permit. But I'll let this defendant—I'll take the evidence because I can always disregard it."

Prior to defendant's motion to introduce evidence of Barber's substance abuse, the hearing justice indicated that he would allow cross-examination of Barber on that issue for the limited purpose of exploring whether "at any material time that an identification was made, or that the alleged criminal conduct took place, that the witness was so far under the influence of a consciousness or mind-altering substance that she was unable to perceive and understand events and to remember them later." In addition, the justice correctly characterized the relevance of the substance-abuse evidence by stating that "[t]he question is whether or not, at the time she made the identification, she was under the influence of a drug which might distort her memory or her powers of observation."

Contrary to defendant's claim, the record does not suggest that the hearing justice misconceived the evidence of Barber's substance abuse, but, rather, that he simply refused to attach as much weight to that evidence as defendant argued was due. It is well-established that the weighing of evidence and the assessment of witness credibility at a probation revocation hearing are functions of the trial justice. *State v. Sikhaolouanglath*, 683 A.2d 376, 378 (R.I.1996); *Bourdeau*, 448 A.2d at 1249. The record is devoid of any evidence that the trial justice acted arbitrarily or capriciously in construing and weighing the evidence of Barber's substance abuse. Therefore, defendant's argument to the contrary must fail.

### Factual Inconsistencies

The defendant also maintained that the hearing justice "failed to properly take into account the inherent inconsistencies in [Barber's] story" and its contradictions with other testimony. For example, several defense witnesses maintained that Barber was in search of drugs on the day of the alleged robbery; Kirwin did not see anyone banging on the liquor store window, nor did he hear anyone shout threats at her; defendant was walking in the opposite direction from that in which Barber had reported he was headed;

Barber initially told Kirwin that she had been robbed of $20 and said nothing about any jewelry; Barber reported that her assailant was five foot seven and had a slight mustache and partial facial hair, but defendant actually is five foot eleven and, according to the testimony of Officer Mann, was clean-shaven on the day of the alleged robbery; the custodial search of defendant revealed that he had no jewelry on his person, and only $28, "although there hardly had been time to spend or trade any loot."

In cases similar to the one before us, this Court has affirmed the findings of trial justices that the defendants had violated the terms of their probations. For example, in *State v. Studman*, 121 R.I. 766, 402 A.2d 1185 (1979), we held that the trial justice had not acted arbitrarily in resolving evidentiary conflict by finding that the defendant was in violation of the terms of his probation, although the defendant was subsequently acquitted of the robbery charge upon which the finding of a violation was based. The Court reasoned in *Studman:*

> "The defendant contends that when [the] evidentiary shortcomings are viewed together, the state's case had such minimal probative value that the trial justice's decision finding the defendant in violation of the terms and conditions of his probation was an arbitrary action. It is obvious, however, that *the issue confronting the trial justice was purely one of credibility.* In his decision, the trial justice examined at length the apparent inconsistencies in the victim's testimony. He nevertheless concluded that the victim's identification of the defendant was trustworthy. *Weighing evidence and assessing the credibility of witnesses are the functions of the trial court. See, e.g., State v. Chatell,* 121 R.I. 528, 401 A.2d 436 (1979); *Raheb v. Lemenski,* 115 R.I. 576, 579, 350 A.2d 397, 399 (1976); *Fournier v. Ward,* 111 R.I. 467, 472, 306 A.2d 802, 805 (1973). This court, with only a barren record before it rather than the flesh and bones of live witnesses, cannot possibly evaluate credibility. Accordingly, we hold that the trial justice did not act arbitrarily in resolving the evidentiary conflict posed at the hearing." (Em-

phases added.) 121 R.I. at 769–70, 402 A.2d at 1187.

Among the apparent inconsistencies offered by the defendant in *Studman* was the fact that the alleged victim reported to the police that her assailant had a beard and testified that the defendant had a beard when she identified him in a subsequent lineup, although a guard at the ACI testified that the defendant did not have a beard during the lineup, and a member of the Attorney General's department testified that he had never seen the defendant with a beard. *Id.* at 768–69, 402 A.2d at 1186; *see also Sikhaolouanglath,* 683 A.2d at 378 (affirming trial justice's finding that the defendant had violated the terms of his probation by delivering cocaine, despite the fact that "no money or drugs were found in his possession when he was arrested").

The hearing transcript reveals that the trial justice considered the sources of apparently conflicting testimony when issuing his finding. The judge stated:

> "I don't accept [defendant's] story. And, I don't believe Walter Harris' story. And, I don't believe Ernest Kirkland. Somewhere in a time frame, which is crocheted with a certain degree of surrealism by defense witnesses, Mr. Kennedy found time to confront Suzanne Barber, strip her of her jewelry, and take her money.

> "Mr. Kirkland was not with Mr. Kennedy every moment of the time that there were encounters around Bar 17. I don't care if Mr. Walter Harris sold Suzanne Barber cocaine or not. Mr. Harris was the paradigmatic unbelievable and uncredible [*sic*] witness. Mr. Kirkland knew exactly what he had to say to bail his source of an occasional five or ten dollars out of the jam in which Mr. Kennedy found himself in. He came through with flying colors. * * *

> "Now, it may be impressive for a jury that she didn't remember the first words that fell from her lips in that liquor store while she was trying to get the clerk to call the police because she had been robbed of a necklace, a bracelet, and approximately $78 from a certain pocket. * * *

"People ordinarily lie for some reason. It's easy to see the reasons why Mr. Kennedy would lie. Mr. Kirkland's lies are understandable. And, Mr. Harris may belong to one of those class [*sic*] of people who show that every rule has its exception. "No one has shown me any reason, any motive, any purpose that Suzanne Barber would have had to lie here."

▆ This Court has held on numerous occasions that, in the context of a probation revocation hearing, a trial justice's decision to accept the testimony of some witnesses as credible, and to reject the testimony of other witnesses, will not be disturbed absent a showing that the trial justice acted in an arbitrary or a capricious manner. *See, e.g., Gilroy,* 688 A.2d at 859; *cf. Bourdeau,* 448 A.2d at 1249 ("[D]efendant argues that because no evidence was presented by anyone other than the complaining witness to rebut defendant's testimony, the trial justice acted arbitrarily and capriciously in rejecting defendant's testimony as a 'bundle of lies.' We cannot agree."). Hence, on the basis of the record before us, we hold that the trial justice did not act arbitrarily or capriciously in rejecting the testimony of certain witnesses and in determining that, despite apparent factual inconsistencies, there existed reasonably satisfactory evidence to support a finding that defendant had violated the terms of his probation.

The defendant also contended that because there were outstanding warrants for Barber's arrest at the time of the alleged incident, the existence of these warrants "might have caused her to attempt to curry favor with the police—whom she knew to have complained about the dismissal of prior cases against Mr. Kennedy." We have reviewed this claim and conclude that it is without merit.

In summary, therefore, we hold that the trial justice did not act arbitrarily or capriciously in finding that the defendant had violated the terms of his probation. Consequently, we deny and dismiss this appeal and affirm the adjudication of the Superior Court, to which we return the papers in this case.