## STATE

v.

## Israel RIVERA.

No. 2004–164–C.A.

Supreme Court of Rhode Island.

May 20, 2005.

---

Jane M. McSoley, Providence, for Plaintiff.

Paula Rosin, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

PER CURIAM.

The defendant, Israel Rivera, appeals from a determination by a Superior Court justice that he violated the terms and conditions of his probation. This case came before this Court for oral argument on April 11, 2005, pursuant to an order directing the parties to appear and show cause why the issues raised should not summarily be decided. After considering the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown, and we will proceed to decide the case at this time. For the reasons stated below, we affirm the judgment of the Superior Court.

### Facts and Procedural History

In 1997, Rivera pleaded *nolo contendere* to one count of assault with a dangerous weapon and one count of carrying a firearm while committing a crime of violence.

He received a ten-year sentence with forty-two months to be served at the Adult Correctional Institutions (ACI), followed by seventy-eight months probation. In 2003, Rivera was arrested and charged with first-degree child molestation. The state then presented Rivera as a violator pursuant to Rule 32(f) of the Superior Court Rules of Criminal Procedure.

On November 10–11, 2003, a Superior Court justice conducted a combination probation-revocation and bail hearing. The hearing justice heard testimony that defendant had molested, Ann,[1] the eleven-year-old sister of his live-in girlfriend,[2] Mildred, when she spent the night following a beach trip at the house that defendant and Mildred shared. Ann's testimony detailed the alleged encounter. She said that she had been sleeping on the couch when Rivera awakened her. She continued, saying that he put a pornographic movie on the television, forced her to perform oral sex on him, performed oral sex on her, and that he "pulled out his penis and put it in my buttocks." Ann also testified that she did not tell Mildred about the incident because she was scared.

Ann's mother, Norma, testified that after returning home, Ann informed her other sisters of the alleged abuse. She said that she became aware of the incident when one of her older daughters relayed Ann's story to her. Finally, she explained that once she heard Ann's story, she called Mildred and asked her to come to her home immediately. She said that Mildred arrived with defendant, and that there was a confrontation. Norma testified that she confronted Mildred with Ann's allegations of molestation, and Mildred denied them saying "[h]er husband couldn't do some-thing like that." Ann's mother then testified that Rivera came forward and denied the allegations as well. He also offered her a cell phone and told her to call the police "if you think I did this[.]" Additionally, Ann's mother testified that Rivera exposed himself to another of her daughters during the same weekend as the alleged molestation.

The defendant testified on his own behalf, as did Mildred, and Victor Alicea, a friend of defendant. Their testimony was aimed at demonstrating that Mildred's young sister concocted the story at Norma's urging. All three suggested that, on the date in question, Rivera had been out with Alicea and did not return home until very late. They also testified that Rivera had forgotten his house keys so that he had to wake Mildred by knocking on the window so she could let him into the house. Mildred testified that after letting defendant in, she was unable to fall back to sleep, so that it was impossible that the alleged molestation could have taken place after defendant returned home from his evening of socializing with Alicea because she would have seen it.

After Mildred testified, the hearing justice asked her additional questions from the bench. The exchange between the hearing justice and Mildred explored her financial dependence on Rivera:

> "THE COURT: Do you work?
>
> "THE WITNESS: No.
>
> "THE COURT: Does [Defendant] work?
>
> "THE WITNESS: That is right.
>
> " * * *
>
> "THE COURT: Does he pay all the bills?

---

**1.** To protect the privacy of the child complainant, we will use the fictitious name Ann when we refer to her.

**2.** Mildred sometimes referred to Rivera as her husband during her testimony, but the couple are not married.

"THE WITNESS: That is right.

"THE COURT: Do you get any money from anybody else?

"THE WITNESS: Welfare."

At the conclusion of all the testimony, the hearing justice found the state's witnesses credible and Rivera's witnesses not credible. The hearing justice weighed the relative credibility of the witnesses before him, explained his credibility determinations, and made his ruling. The hearing justice said that "the youngster [complaining witness] must be believed, and I do believe her," that it was "interesting that * * * the defendant * * * [never] flatly denied [the allegations]," and that the testimony of the live-in girlfriend "was not helpful at all" because she "relie[d] on [Rivera] for her 'meal ticket.'"

The hearing justice then determined that Rivera had violated his probation, and ordered him to serve an additional eighteen months of his previously suspended sentence at the ACI, with sixty months probation to follow. Judgment was entered on November 12, 2003, and defendant timely appealed.

## Analysis

On appeal, Rivera advances two arguments on this Court. First, he contends that the evidence presented at the hearing was not sufficient to show that he violated the terms of his probation by failing to keep the peace and be on good behavior. Second, he claims that the hearing justice inappropriately considered Mildred's living arrangement with defendant, her financial dependence on him, and the possibility of welfare fraud when he assessed the credibility of her testimony.

■■■ Our review of a probation-revocation decision is limited to a determination of whether the hearing justice's decision was arbitrary or capricious. *State v.*

*Znosko,* 755 A.2d 832, 834 (R.I.2000) (citing *State v. Rioux,* 708 A.2d 895, 897 (R.I. 1998)). A hearing justice need determine only that the state has proved by "reasonably satisfactory evidence" that the defendant has violated the terms of probation. *Id.* (citing *State v. Kennedy,* 702 A.2d 28, 31 (R.I.1997)). To comply with the terms of probation a defendant must "keep the peace and * * * remain on good behavior[.]" *State v. Godette,* 751 A.2d 742, 745 (R.I.2000) (quoting *State v. Hie,* 688 A.2d 283, 284 (R.I.1996)). Determining the relative credibility of witnesses at a probation-revocation hearing is uniquely the function of the hearing justice. *State v. Waite,* 813 A.2d 982, 985 (R.I.2003). Thus, the question for us to determine is whether, in weighing the testimony from both the state's and Rivera's witnesses, the trial justice rationally accepted Ann's testimony, and rejected the testimony of Rivera's witnesses.

Our review of the record reveals that the hearing justice considered the testimony of two witnesses on behalf of the state and three witnesses on behalf of Rivera, including the defendant himself. After Mildred testified, the hearing justice questioned her briefly regarding her relationship to defendant, her living situation, and her financial dependence on defendant. We disagree with defendant's contention that the hearing justice improperly discredited Mildred's testimony because he disapproved of her domestic situation with defendant, or that he suspected her of welfare fraud. We see no support in the record for such a contention. Rather, it is obvious that the hearing justice considered Mildred's relationship with defendant and financial dependence on him as biasing her testimony to some degree. The hearing justice was completely within his discretion in evaluating these factors as he weighed the credibility of her testimony.

Because we conclude that the hearing justice acted properly in considering the evidence before him, we hold that his finding that defendant had violated his probation was rational, and neither arbitrary nor capricious. *See Znosko,* 755 A.2d at 834. The statements made by the hearing justice that Ann's testimony had to be believed and that Mildred's testimony was unhelpful reflect a rational thought process that simply cannot be characterized as arbitrary or capricious.

## Conclusion

For the reasons stated here, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.