STATE

v.

**Jodi JOHNSON.**

No. 2005–98–C.A.

Supreme Court of Rhode Island.

June 12, 2006.

 

Jane M. McSoley, Esq., Providence, for Plaintiff.

Marie T. Roebuck, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice SUTTELL, for the Court.

The defendant, Jodi Johnson, appeals from a determination by a Superior Court justice that he violated the terms of his probation. This case came before the Supreme Court for oral argument pursuant to an order directing the parties to show cause why the issues raised in this appeal should not be decided summarily. After hearing the arguments of counsel and examining the record and memoranda filed by the parties, we are of the opinion that the appeal may be resolved without further briefing or argument. For the reasons stated herein, we affirm.

### Facts and Procedural History

On January 13, 1992, defendant entered a plea of *nolo contendere* to charges of robbery. The sentencing justice committed defendant to the custody of the Adult Correctional Institutions for a period of seventeen years, with seven years to serve, ten years suspended, and ten years of probation to commence upon release. On August 27, 2004, defendant was arrested; the next day, he was charged with first-degree robbery in derogation of G.L.1956 § 11–39–1. The state presented defendant as a violator on August 30, 2004, pursuant to Rule 32(f) of the Superior Court Rules of Criminal Procedure. A justice of the Superior Court conducted a consolidated

revocation and bail hearing on various days between November 29 and December 15, 2004. The hearing justice heard testimony that defendant, donning a mask and brandishing what appeared to be a firearm, entered a private dwelling on Douglas Avenue in a nocturnal hunt for capital.

Jamie Tierney, the complaining witness, testified that, on the night of August 27, 2004, she arrived at "a friend of a friend['s]" first-floor apartment on Douglas Avenue where some people were playing cards. Tierney continued that the apartment's tenant, whom she identified only as "Mike," left his apartment at some point during the card game, but she was unsure about his precise reason for doing so. In any event, a short time after Mike departed, a gun-wielding intruder burst into the apartment through the unlocked front door, yelling: "Where's Mike? Where's the money at[?]" A petrified Tierney ducked beneath the kitchen table while the gunman rifled through the kitchen cabinets, frenetically repeating his queries. Although a camouflage mask prevented Tierney, who was lying prostrate on the floor beneath the kitchen table, from observing the gunman's facial features, she was able to scrutinize the distinctive multi-colored Timberland-brand boots in which the man paced back and forth only a short distance from her concealed position. Tierney also testified that after the gunman retreated from the apartment she noticed that the wallet inside her purse was missing; however, as the police later revealed, the wallet was recovered on the same evening with its contents apparently undisturbed.

Michael Robinson, the individual Tierney identified as "Mike," testified that he had briefly left his apartment and his company to go next door and assist a friend, as was his custom, in closing down his store. Later, as Robinson returned home, he saw people fleeing from his apartment while warning of an intruder within. Peering cautiously into his apartment from an open window, Robinson immediately recognized the intruder as Jodi Johnson, a person Robinson has known since childhood. Robinson testified that Johnson was waiving his arms fervidly as he yelled "[g]et on the ground." The witness did not recall a camouflage mask, but he testified that Johnson wore purple gloves and a "reddish pink" bandana that partially obstructed his face. While Johnson still was canvassing the apartment, Robinson crept around the house to the backyard. In a fortuitous encounter, Johnson, who had just left the apartment, spotted Robinson and ordered him to "freeze." Robinson disobeyed, despite noticing that Johnson held what appeared to be a gun, and he fled the yard unharmed.

Patrolman Eric Shabot, the police officer who apprehended defendant, testified that he and his partner were traversing Douglas Avenue when they received a radio transmission of the home invasion that occurred two or three blocks away. As Ptlm. Shabot began walking toward the reported crime scene, he observed defendant running toward him. As defendant became aware of Ptlm. Shabot's proximity, defendant slowed to a walk, crossed to the other side of the street, and then turned and began to sprint away. Patrolman Shabot gave chase on foot, during which pursuit defendant haphazardly discarded some items. Patrolman Shabot later collected a camouflage mask and purple gloves near a fence that defendant cleared just before being apprehended at the corner of Douglas Avenue and Venice Street. A police detective, who retraced the flight path the next day, testified that he found a small black BB gun on the ground in a yard adjacent to defendant's point of capture.

On December 15, 2004, at the conclusion of all the testimony, the hearing justice, assessing the credibility of the witnesses and weighing the evidence, determined that Johnson had violated the terms of his probation. The hearing justice ordered defendant to serve nine years of his previously suspended ten-year sentence, with one year of probation to follow. Further, the hearing justice noted that the issue of bail was moot in light of the sentence and also denied bail finding defendant to be "dangerous" because of his record. Judgment entered on November 29, 2004, and this appeal ensued.[1]

## Discussion

The defendant advances two arguments before us on appeal. First, defendant contends that the hearing justice improperly limited cross-examination concerning Robinson's penchant for cooperating with law enforcement officials. Second, defendant attacks the state's proffered evidence as insufficient and argues that the hearing justice acted "arbitrarily and capriciously" in determining that he violated his probation.

▉ For people under the specter of probation, the failure to keep the peace at all times and remain on good behavior may result in the realization of stringent penalties. *See, e.g., State v. Waite,* 813 A.2d 982, 985 (R.I.2003); *State v. Godette,* 751 A.2d 742, 745 (R.I.2000). In presenting its case, "the state need not prove beyond a reasonable doubt that a defendant has violated his [or her] probation," *State v. Russo,* 701 A.2d 1023, 1024 (R.I.1997) (mem.); rather, "reasonably satisfactory evidence" will suffice. *State v. Rivera,* 873 A.2d 115, 118 (R.I.2005) (quoting *State v. Znosko,*

755 A.2d 832, 834 (R.I.2000)). Our review of a probation-revocation decision, as defendant's second argument on appeal presumes, is limited to determining whether the hearing justice acted arbitrarily or capriciously. *See, e.g., State v. White,* 896 A.2d 733, 734 (R.I.2006) (mem.); *Rivera,* 873 A.2d at 118; *State v. Sylvia,* 871 A.2d 954, 957 (R.I.2005).

▉ Although a revocation hearing "does not call for the 'full panoply of rights' normally guaranteed to defendants in criminal proceedings," we have broadcast on several occasions that a defendant nevertheless retains "the right to confront and cross-examine the witnesses against [him or her]" in accordance with the Sixth Amendment to the United States Constitution and its state counterpart in article 1, section 10, of the Rhode Island Constitution. *State v. Crudup,* 842 A.2d 1069, 1073 (R.I.2004) (quoting *State v. Vashey,* 823 A.2d 1151, 1155 (R.I.2003)). In either proceeding, cross-examination provides a defendant with the indispensable opportunity "to establish possible bias, prejudice, or ulterior motives of the adverse witness." *State v. Snell,* 861 A.2d 1029, 1031 (R.I. 2004) (quoting *Russo,* 701 A.2d at 1024). However, a hearing justice has wide discretion to interrupt a prolonged line of questioning during cross-examination, irrespective of a witness's possible motivations for testifying, if the object of the inquiry is irrelevant to the determination of whether a defendant violated his or her probation. *See, e.g., Rivera,* 873 A.2d at 118; *Snell,* 861 A.2d at 1031; *Russo,* 701 A.2d at 1024; *State v. Bourdeau,* 448 A.2d 1247, 1249 (R.I.1982). This Court will not disturb a hearing justice's decision to limit the scope of cross-examination absent a clear abuse

---

1. The defendant filed a premature notice of appeal on December 24, 2004, however; this Court routinely has entertained such appeals as long as a final judgment ultimately is en-

tered. *See, e.g., McBurney v. The GM Card,* 869 A.2d 586, 589 n. 3 (R.I.2005); *Dovenmuehle Mortgage, Inc. v. Antonelli,* 790 A.2d 1113, 1114 n. 1 (R.I.2002).

of discretion. *See, e.g., Snell,* 861 A.2d at 1031.

 In the instant case, we are unpersuaded that the hearing justice abused her broad discretion in limiting the scope of defense counsel's inquiry into Robinson's association with the Providence Police Department. The transcript reveals that the hearing justice granted defense counsel considerable latitude in questioning Robinson about his cooperation in past narcotics investigations, the particular information Robinson disclosed to police to help them, and the possibility of a *quid pro quo* coupled with that cooperation. The hearing justice simply prohibited Robinson from identifying, by name, a police officer to whom he had provided narcotics-related information in the past, although she did permit testimony about the officer's status as a detective in the Providence Police Department. When the court inquired about the relevancy of the identification, defense counsel responded: "If it's an officer in this case, * * * that would be extremely relevant." The state represented, however, that the detective at issue was not in any way involved in the case *sub judice.* Thereafter, defense counsel continued to pepper the witness with questions about his past cooperation with law enforcement generally, barred only by the aforementioned prohibition against identification by name, for which defense counsel never provided an alternative relevancy rationale. Consequently, based on the circumstances of this case, we hold that the trial justice's decision to restrict the disclosure of the detective's name did not contravene defendant's right to confrontation and, therefore, did not constitute an abuse of discretion.

 Further, the defendant's assertion that the findings of the hearing justice were arbitrary or capricious ignores the evidence upon which those findings relied.

Tierney's testimony about the gunman's Timberland-like boots, Robinson's immediate recognition of a neighborhood ruffian, and Ptlm. Shabot's pursuit and capture of a suspicious person in close proximity to the scene of the robbery provided more than the "reasonably satisfactory evidence" necessary to revoke the defendant's probation. Although we appreciate the defendant's apprehension over Robinson's hesitancy to be entirely forthright in describing the extent of his past cooperation with Providence police—something only defense counsel's persistent cross-examination revealed—the hearing justice found the witness to be credible. Because it is not the role of this Court to second-guess credibility assessments in such matters, *see, e.g., State v. Texter,* 896 A.2d 40, 43–44 (R.I.2006), and because we concur that the state's evidence was reasonably satisfactory to secure the revocation of the defendant's probation, we hold that the hearing justice acted neither arbitrarily nor capriciously.

### Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court, to which we remand the record in this case.