**Harold CURTIS**

v.

**STATE of Rhode Island.**

**No. 2008–153–Appeal.**

Supreme Court of Rhode Island.

June 4, 2010.

Michael J. Pisaturo, Esq., for Plaintiff.

Lauren S. Zurier, Department of Attorney General, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, and ROBINSON, JJ.

## OPINION

Chief Justice SUTTELL, for the Court.

This case presents the issue: Is a prisoner released on parole entitled to receive credit toward his or her full sentence of imprisonment for time served while on community confinement? The state appeals from a Superior Court judgment granting a motion to correct the sentence [1] of the defendant, Harold Curtis, which awarded him credit toward the completion of his full sentence for time served as a parolee on community confinement. This case came before the Supreme Court for oral argument pursuant to an order directing the parties to show cause why the issues raised in this appeal should not summarily be decided. After examining the written and oral submissions of the parties, we conclude that this appeal may be resolved without further briefing or argument. For the reasons set forth in this opinion, we vacate the judgment of the Superior Court.

---

1. Mr. Curtis filed an application for postconviction relief *pro se,* but the hearing justice found it more appropriate to treat the application as a motion for a corrected sentence under Rule 35 of the Superior Court Rules of Criminal Procedure.

## I

### Facts and Procedural History

On July 30, 2003, Mr. Curtis pled nolo contendere to breaking and entering a dwelling with felonious intent and was sentenced to ten years imprisonment, with five years to serve and five years suspended, with probation. His sentence was made retroactive to December 10, 2002. The defendant was released on parole in March 2006, a special condition of which was that he cooperate with the electronic monitoring program (EMP) for a minimum of ninety days.[2] Before being released from the Adult Correctional Institutions (ACI) on parole, Mr. Curtis signed a document setting forth the terms and conditions of his parole. One of the terms provided:

> "I agree that when this permit has been revoked as herein provided, or there is probable cause for such revocation, the Parole Board may issue an order authorizing my arrest an[d] my return to the place of confinement pending a hearing, and that I shall be detained therein according to the terms of my original sentence; and *in computing the period of my confinement, the time between my release upon said permit and my return to the place of my original confinement shall not be considered as any part of the term of my original sentence.*" (Emphasis added.)

On June 1, 2007, defendant returned to the ACI as a parole violator. He thereafter was scheduled for early release on July 14, 2008, as a result of his accrued good-time credits.

On April 7, 2008, Mr. Curtis filed an application for postconviction relief in Superior Court. Hearings were held on June 4, 2008 and June 11, 2008, during which defendant sought immediate release from the ACI, asserting that the ninety days he spent on community confinement when he first was paroled in March 2006 should be credited toward the time he had left to serve after his parole was revoked.

■ On June 11, 2008, the hearing justice ruled from the bench, and an order entered granting defendant's request to receive credit for time spent on "electronic monitoring/community confinement" toward the completion of his full sentence. On June 17, 2008, judgment was entered, and the state filed an appeal.[3] The state thereafter sought and obtained an order of this Court staying the effect of the Superior Court order until the issue could be resolved on appeal. Because of this Court's stay, defendant was not immediately released, and ultimately he completed his sentence in the ACI without credit for time served on community confinement.

## II

### Standard of Review

■ As a general matter, "our review of a motion justice's ruling on a motion to

---

2. The electronic monitoring program requires a parolee to wear an electronic ankle bracelet. The Department of Corrections' Electronic Monitoring Parole Agreement, an agreement that, according to the state, is executed by all electronic monitoring program participants, states that a parolee may leave his or her residence only "for work, education, training, court, medical, counseling services relating to transition of offenders in the community as determined by [his or her parole] officer, * * * religious services[,]" or to other locations approved by his or her parole officer.

3. The state prematurely filed notices of appeal on both June 13, 2008 and June 16, 2008. This Court, however, will treat a premature notice of appeal as timely as long as a final judgment is entered thereafter. *See State v. Espinal*, 943 A.2d 1052, 1057 n. 4 (R.I.2008).

correct pursuant to Rule 35 is limited." *State v. Goncalves,* 941 A.2d 842, 847 (R.I. 2008). A ruling on a motion to correct sentence is committed to the sound discretion of the hearing justice, and his or her decision will normally be disturbed "only when the sentence is without justification." *State v. Brown,* 755 A.2d 124, 125 (R.I. 2000) (quoting *State v. Brigham,* 666 A.2d 405, 406 (R.I.1995)).

■ The issue in this case, however, requires us to construe several provisions of G.L.1956 chapter 8 of title 13. This Court reviews questions of statutory interpretation *de novo. State v. Greenberg,* 951 A.2d 481, 489 (R.I.2008). When construing a statute, we "look to the plain and ordinary meaning of the statutory language." *Id.* (quoting *Henderson v. Henderson,* 818 A.2d 669, 673 (R.I.2003)). It is generally presumed that the General Assembly "intended every word of a statute to have a useful purpose and to have some force and effect." *LaPlante v. Honda North America, Inc.,* 697 A.2d 625, 629 (R.I.1997) (quoting *Defenders of Animals v. Dept. of Environmental Management,* 553 A.2d 541, 543 (R.I.1989)). Further, when construing the meaning of statutes, this Court must consider "individual sections [of a statute] * * * in the context of the entire statutory scheme, not as if each section were independent of all other sections." *Planned Environments Management Corp. v. Robert,* 966 A.2d 117, 122 (R.I.

2009) (quoting *In re Brown,* 903 A.2d 147, 149 (R.I.2006)).

## III

### Discussion

■ On appeal, the state sets forth a number of arguments supporting its position that defendant should not receive credit for time served as a parolee on community confinement. First, the state contends that the hearing justice was incorrect in her interpretation of the relevant statutes. The state argues that, according to their plain meanings, §§ 13–8–9 [4] and 13–8–19(b) [5] contemplate parole as inclusive of all attendant terms and conditions. As a result, the state reasons, the meaning of the term "liberty" should not be considered in its absolute sense, but rather within the parole context as indicated by the modifying phrase "upon parole," as set forth in § 13–8–9. The state also highlights that Mr. Curtis signed an agreement setting forth the terms and conditions of his parole; that agreement specifically excluded time spent on parole from being credited toward his full sentence. Furthermore, the state avers that the General Assembly views community confinement and time spent in the ACI as qualitatively different, highlighting the divergent statutory treatment of credit for time served while awaiting trial in the ACI as opposed to on community confinement.

---

4. General Laws 1956 § 13–8–9 states:
   "The parole board, in the case of any prisoner whose sentence is subject to its control, unless that prisoner is sentenced to imprisonment for life, and unless that prisoner is confined as a habitual criminal under the provisions of § 12–19–21, may, by an affirmative vote of a majority of the members of the board, issue to that prisoner a permit to be at liberty upon parole, whenever that prisoner has served not less than one-third (1/3) of the term for which

he or she was sentenced. The permit shall entitle the prisoner to whom it is issued to be at liberty during the remainder of his or her term of sentence upon any terms and conditions that the board may prescribe."

5. Section 13–8–19(b) states: "The time between the release of the prisoner under the [parole] permit and the prisoner's return to the [ACI] * * * under order of the board shall not be considered as any part of the prisoner's original sentence."

Mr. Curtis counters that the hearing justice correctly interpreted this Court's precedent as establishing that community confinement is a form of imprisonment and that, by definition, defendant could not have been "at liberty" while he was imprisoned. The defendant further contends that his parole agreement, which purportedly waived his right to receive credit for any time served on community confinement, is null and void as a contract of adhesion. He also argues that such a waiver of his liberty would constitute a usurpation of legislative power by the parole board.

In her bench decision, the hearing justice considered the plain and ordinary meanings of the phrase "at liberty" and the word "confinement" and found them to be fundamentally contradictory. Because, in her view, the two words are at odds with one another, the hearing justice reasoned that a parolee on community confinement could not be considered at liberty upon parole, as required by § 13–8–16.[6] The hearing justice noted that, given this contradiction, it would be incumbent upon the General Assembly to clarify § 13–18–19(b) to expressly preclude parolees from receiving credit for time spent on community confinement toward the completion of their full sentence. Therefore, the hearing justice concluded that the time Mr. Curtis had spent on community confinement should be credited toward his full sentence.

The issue presented on appeal concerns the interplay of three statutes, *viz.*, §§ 13–8–16(a), 13–8–19(b), and 13–8–9. Section 13–8–19(b) generally precludes a prisoner from receiving credit toward his or her full sentence for time spent on parole. Section 13–8–9 grants the parole board the authority to issue a permit to a qualified prisoner "to be at liberty upon parole" that "entitle[s] the prisoner * * * to be at liberty during the remainder of his or her term of sentence upon any terms and conditions that the board may prescribe." Section 13–8–16(a) has similar language, stating that a parole permit entitles a parolee "to be at liberty upon parole during the remainder of the term which he or she is under sentence to serve, upon any terms and conditions that the board may see fit in its discretion to prescribe * * *."

■ We focus our analysis on the "permit" that the parole board is authorized to grant within the statutory framework. Under § 13–8–9, the parole board may issue to a qualified prisoner "a permit to be at liberty upon parole," which "permit shall entitle the prisoner to whom it is issued to be at liberty during the remainder of his or her term of sentence upon any terms and conditions that the board may prescribe." The conditional nature of the parole permit is reemphasized in § 13–8–16(a). The statutory language not only repeats the board's authority to prescribe "any terms and conditions" that it "may see fit in its discretion," but also it provides that "the acceptance of the permit by the prisoner shall constitute an agreement on the part of the prisoner to abide by and conform to those terms and conditions." Section 13–8–16(a). Thus, it is clear that a permit "to be at liberty on parole" is subject to whatever reasonable conditions the parole board may prescribe. *See Rondoni v. Langlois*, 89 R.I. 373, 376, 153 A.2d 163,

---

6.  Section 13–8–16(a) states:

    "Every permit issued by the parole board under this chapter shall entitle the prisoner to whom it is issued to be at liberty upon parole during the remainder of the term which he or she is under sentence to serve, upon any terms and conditions that the board may see fit in its discretion to prescribe, and the acceptance of the permit by the prisoner shall constitute an agreement on the part of the prisoner to abide by and conform to those terms and conditions."

164–65 (1959) (holding that the defendant was bound by the conditions of his parole agreement). This is also consistent with our previous cases concerning parole, in which we have characterized parole as a privilege to which the parolee assents. *See Bishop v. State,* 667 A.2d 275, 278 (R.I.1995) ("[T]here is no 'constitutional or inherent right' to parole * * *.") (quoting *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979)).

We next consider § 13–8–19(b), which states: "The time between the release of the prisoner under the [parole] permit and the prisoner's return to the [ACI] under order of the board shall not be considered as any part of the prisoner's original sentence." In the case at bar, cooperation with the EMP for a minimum of three months was manifestly a special condition of Mr. Curtis's parole permit. A second condition of his permit was that in the event his parole should be revoked "the time between [his] release upon said permit and [his] return to the place of [his] original confinement shall not be considered as any part of [his] original sentence." It is clear to us under the plain meaning of the statutory language, as well as by Mr. Curtis's assent to the terms of his permit, that the ninety days he spent on community confinement may not be credited against his original sentence.

Thus, we need not examine contemporary notions of liberty and contrast them with the realities of community confinement. Clearly, the meaning of liberty within the parole context cannot be construed as an absolute liberty or an absolute freedom. Rather, liberty within the parole context is qualified by such terms and conditions as the parole board sees fit.

Mr. Curtis argues that time spent in community confinement on the electronic monitoring program is imprisonment, cit-ing *State v. Quattrocchi,* 687 A.2d 78, 79 (R.I.1996) ("We are persuaded that home confinement is a form of imprisonment during which an employee's liberty is significantly restrained.") and *State v. Desjarlais,* 731 A.2d 716, 718 (R.I.1999) (stating that "sentencing a person to [community] confinement as opposed to incarceration in a correctional facility is merely a 'change in the place where he or she is confined' ") (quoting *State v. Mariano,* 648 A.2d 803, 804 (R.I.1994)). Neither of these cases, however, concerns a prisoner who is released from incarceration pursuant to a permit to be at liberty upon parole, nor do they alter the plain meaning of § 13–8–19(b), which precludes a prisoner from receiving credit for any time served on parole under a permit. Therefore, we hold that defendant was "at liberty upon parole" within the meaning of §§ 13–8–16(a) and 13–8–9, notwithstanding the condition that he cooperate with the EMP, and thus, under § 13–8–19(b), defendant is not entitled to receive credit for time spent on community confinement toward the completion of his full sentence.

We note that this conclusion is further supported by this Court's reluctance to grant credit for time served when such credit has not been explicitly provided for by statute, as is the case here. *See State v. Murphy,* 692 A.2d 335, 336 (R.I.1997) (mem.) ("The absence of [legal authority mandating or permitting credit toward the completion of a sentence] is dispositive of the defendant's appeal, especially since there are no equities present in this case that would serve to support the development of new legal precedent.").

■ Additionally, defendant was put on notice when he signed his parole agreement, which explicitly stated that he would not receive credit for the time he was on parole. This condition generally referred to the time between "release upon said

permit" and his return to the ACI. We, however, need not reach the issue of whether this parole agreement was a contract of adhesion because, as we have previously noted, parole is a privilege and not a right of the prisoner. *See Bishop,* 667 A.2d at 278.

Finally, the defendant's argument that the waiver of credit for time spent on community confinement would constitute a usurpation of legislative power by the parole board is without merit. Section 13–8–9 explicitly authorizes the parole board to issue parole permits to qualified prisoners "upon any terms and conditions that the board may prescribe." Therefore, we are satisfied that the parole board was not acting beyond the parameters of the General Assembly's authorization.

### IV

### Conclusion

For the reasons set forth in this opinion, we vacate the judgment granting the defendant's motion to correct sentence. The papers in the case shall be returned to the Superior Court.

Justice INDEGLIA took no part in the consideration or decision of this appeal.