**Supreme Court**

No. 2012-129-Appeal.

(PM 10-5941)

Alexander Rose                    :

        v.                        :

State of Rhode Island.            :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

**Supreme Court**

No. 2012-129-Appeal.
(PM 10-5941)
Dissent begins on page 15

Alexander Rose                        :

v.                        :

State of Rhode Island.                        :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Indeglia, for the Court.**  The applicant Alexander Rose (Rose or applicant),

appeals from a Superior Court judgment denying his petition for a writ of habeas corpus and his

application for postconviction relief.[1]  On appeal, the applicant argues that the hearing justice

erred by miscalculating the length of his sentence.  For the reasons set forth in this opinion, we

affirm the judgment of the Superior Court.

**I**

**Facts and Travel**

The pertinent facts in this matter are not in dispute.  On December 23, 1992, Rose was

incarcerated at the Adult Correctional Institutions (ACI) while awaiting the disposition of an

allegation of first-degree child molestation.  On March 14, 1994, Rose pled nolo contendere to

one count of first-degree child molestation.  The sentencing justice imposed the mandatory

---

[1] Since there is no appeal from the Superior Court's denial of a petition for a writ of habeas corpus, we will confine our review to the denial of Rose's application for postconviction relief. See DiLibero v. State, 996 A.2d 599, 601 (R.I. 2010) (citing G.L. 1956 § 10-9-22).  We note, however, that in this case, the distinction is immaterial.  Rose sought the same relief in both his application and his petition, and the hearing justice denied both on the same grounds.

minimum sentence under G.L. 1956 § 11-37-8.2 of twenty years,[2] with eight years to serve, and the remaining twelve years suspended with twelve years probation. At the plea hearing, the sentencing justice engaged in the following colloquy with Rose:

> "THE COURT: You heard the [state's] recommendation of a 20-year sentence, eight years to serve. You'll receive credit for time served <u>retroactive</u> to December 23, 1992. What I want to make sure you understand is that after you're released from that eight years to serve, you still have a 12-year suspended sentence hanging over you and 12 years probation. Do you understand that?
>
> "[Rose]: I understand.
>
> "THE COURT: When I say, 'hanging over you,' I just mean that <u>for 12 years after your release you are going to be on probation</u>[.] [D]uring that period * * * you will comply with the terms and conditions of probation. If * * * a judge after a hearing were to find that you violated probation, that judge could then revoke the 12-year suspended sentence and you could be ordered to serve up to 12 years at the ACI. You understand all that?
>
> "[Rose]: Yes.
>
> "* * *
>
> "THE COURT: In this matter, the defendant is sentenced to 20 years at the ACI, eight years to serve, credit retroactive to December 23, 1992, the balance, 12 years, suspended, and <u>upon release the defendant is placed on 12 years probation</u>." (Emphasis added.)

A judgment of conviction and commitment entered on March 17, 1994.[3]

Rose was released from the ACI on parole on December 17, 1997, less than four years after the imposition of his sentence. In addition to receiving credit for the fifteen months he was confined while awaiting disposition of his case, Rose also earned credits under G.L. 1956 § 42-

---

[2] In 2006, the Legislature increased the mandatory minimum to twenty-five years. <u>See</u> P.L. 2006, ch. 206, § 3.

[3] The judgment of conviction gives the effective date of Rose's sentence as December 23, 1993, instead of December 23, 1992. This appears to be an error.

- 2 -

56-24 for good behavior and participation in institutional industries. Rose completed his period of parole without incident sometime in July 1999. To date, he has not violated the terms of his probation.

On October 13, 2010, Rose filed a petition for a writ of habeas corpus, in which he requested that the Superior Court order his discharge from the allegedly unlawful custody of his probation officer. Thereafter, on October 25, 2010, Rose moved to amend his pleadings to add an application for postconviction relief under G.L. 1956 § 10-9.1-1(a)(5).[4] In a memorandum in support of his petition and application, he asserted that his period of probation had ended on December 17, 2009, twelve years after the date of his release from the ACI. Rose alternatively argued that, if his sentence did not end on December 17, 2009, it would terminate in July 2011, twelve years after his successful completion of parole. The state objected to Rose's petition, arguing that Rose's period of probation does not end until March 2014, twenty years from the date his sentence was imposed.

A Superior Court hearing justice denied Rose's petition for habeas corpus and his application for postconviction relief in a written decision filed on September 22, 2011. In her

---

[4] General Laws 1956 § 10-9.1-1(a) provides, in relevant part:

> "Any person who has been convicted of, or sentenced for, a crime * * * and who claims:
>
> "* * *
>
> "(5)   That his or her sentence has expired, his or her probation, parole, or conditional release unlawfully revoked, or he or she is otherwise unlawfully held in custody or other restraint;
>
> "* * *
>
> "may institute, without paying a filing fee, a proceeding under this chapter to secure relief."

- 3 -

decision, the hearing justice concluded that Rose's probation placed him under an implied obligation to keep the peace and be of good behavior for the full length of his sentence. She stated that Rose's "'20-year full sentence' began on March 14, 1994 and [runs] until March 13, 2014." In reaching her conclusion, the hearing justice specifically reasoned that Rose's "good time credit does not change the beginning date and end date of [his] full sentence." She did not expressly address whether Rose's credits for time served or his time spent on parole could alter the end date of his sentence.

An order denying Rose's petition for habeas corpus and his application for postconviction relief entered on October 19, 2011. Final judgment entered on April 3, 2012. The applicant timely filed a notice of appeal on September 27, 2011.[5]

## II

## Standard of Review

To decide this appeal, we must construe several statutory provisions. "[T]his Court reviews questions of statutory interpretation de novo." McCulloch v. McCulloch, 69 A.3d 810, 819 (R.I. 2013) (quoting Bucci v. Lehman Brothers Bank, FSB, 68 A.3d 1069, 1078 (R.I. 2013)). "[W]hen the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." State v. Hazard, 68 A.3d 479, 485 (R.I. 2013) (quoting Alessi v. Bowen Court Condominium, 44 A.3d 736, 740 (R.I. 2012)). "[O]ur ultimate goal is to give effect to the purpose of the act as intended by the Legislature." Swain v. Estate of Tyre ex. rel. Reilly, 57 A.3d 283, 289 (R.I. 2012) (quoting Webster v. Perrotta, 774 A.2d 68, 75 (R.I. 2001)).

_____

[5] We consider a premature notice of appeal timely so long as final judgment is thereafter entered. Curtis v. State, 996 A.2d 601, 603 n.3 (R.I. 2010) (citing State v. Espinal, 943 A.2d 1052, 1057 n.4 (R.I. 2008)).

- 4 -

## III

## Discussion

On appeal, Rose argues that the hearing justice erred in concluding that his sentence could not end before March 13, 2014. He does not dispute that he is under an obligation to keep the peace and be of good behavior for the full length of his sentence. Rose instead asserts that his full sentence expired earlier than March 13, 2014 because the credits that he received for time served and good time[6] accelerated the start date, and consequently, the end date of his probationary period. Although he initially made a similar argument about his grant of parole, he conceded at oral argument that his release on parole did not have any effect on the end date of his probationary period. Accordingly, we are left with two questions to resolve in this appeal: What effect, if any, do Rose's credits for (1) good time and (2) time served have on the total length of his sentence?

## A

## Good-Time Credits Under G.L. 1956 § 42-56-24

Rose's sentence is the result of the interplay of several statutory provisions. In particular, "[t]he Legislature has provided by statute several methods of mitigating a defendant's sentence: suspension, probation, good-time credits, [and] parole," among others. State v. O'Rourke, 463 A.2d 1328, 1331 (R.I. 1983). Good-time credits are available in "[m]ost jurisdictions * * * for satisfactory conduct while incarcerated. This credit * * * shortens the term to be served."[7] Neil

---

[6] Rose received credits for both good conduct and participation in institutional industries. For the sake of simplicity, we collectively refer to both categories of credits as "good-time credits."

[7] The exact effect of good-time credits on a prisoner's release, i.e. how early he or she is released and whether that release is on parole, varies not only from one prisoner to another but also from one jurisdiction to another, depending on the sentencing scheme each jurisdiction employs. See James B. Jacobs, Sentencing by Prison Personnel: Good Time, 30 UCLA L. Rev. 217, 222-24 (1982); Neil P. Cohen, 1 The Law of Probation and Parole, § 4:20 (2d. ed. 1999). The minimum

P. Cohen, 2 The Law of Probation and Parole, § 28:26 at 28-42 (2d ed. 1999); see generally Michael M. O'Hear, Solving the Good-Time Puzzle: Why Following the Rules Should Get You Out of Prison Early, 2012 Wis. L. Rev. 195, 195, 200 (2012) (noting that "[a]t least twenty-nine states and the federal government currently offer prison inmates early release, sometimes by many years, in return for good behavior"). Good-time credit serves two primary purposes: it incentivizes orderly behavior while incarcerated. In addition, since good-time credit "results in early release for many inmates[, it] reduces prison overcrowding." Neil P. Cohen, 1 The Law of Probation and Parole, § 4:20 at 4-37, § 4:28 at 4-48 (2d ed. 1999); see also Ceceila Klingele, Changing the Sentence Without Hiding the Truth: Judicial Sentence Modification as a Promising Method of Early Release, 52 Wm. & Mary L. Rev. 465, 487-91 (2010) (characterizing good-time credit as a traditional method of early release that encourages good behavior and reduces overcrowding).

Our Legislature has endowed the Department of Corrections (DOC) in § 42-56-24 with the authority to mitigate a defendant's sentence by rewarding a prisoner's good behavior and industriousness with credits towards his or her sentence. The version of § 42-56-24 in effect in 1994[8] provided:

> "(a) The director or his or her designee shall keep a record of the conduct of each prisoner, and for each month that a prisoner who has been sentenced to imprisonment for six (6) months or more and not under sentence to imprisonment for life, appears by the record to have faithfully observed all the rules and requirements of the institutions and not to have been subjected to discipline, there shall, with the consent of the director of the department of

that we are concerned with in this case, however, is not the minimum period of incarceration. Rather the issue in this case is what comes after Rose's release. Accordingly, we assume for the purposes of this appeal that Rose's release date was correctly calculated.

[8] A prisoner's good behavior and institutional industries credits are to be determined in accordance with the statutory provisions in effect at the time of sentencing. Barber v. Vose, 682 A.2d 908, 913 n.3 (R.I. 1996).

corrections * * * be deducted from the term or terms of sentence of that prisoner the same number of days that there are years in the term of his or her sentence; provided that when the sentence is for a longer term than ten (10) years, only ten (10) days shall be deducted for one month's good behavior * * *.

"* * *

"(e)   For each month that a prisoner who has been sentenced to imprisonment for six (6) months or more and not under sentence to imprisonment for life who has faithfully engaged in institutional industries there shall, with the consent of the director * * * be deducted from the term or terms of the prisoner an additional two (2) days a month.  These two (2) days a month shall be deducted regardless of the length of the sentence of the prisoner."

The first clause of § 42-56-24(a) clearly limits that provision's applicability to situations where a defendant is "sentenced to imprisonment for six (6) months or more" but not "sentenced to imprisonment for life." (Emphases added.)  That section then goes on to state that a defendant's good-time credits "shall * * * be deducted from the term or terms of sentence."  Id.  (emphasis added).  "The same words used twice in the same act are presumed to have the same meaning." 2A Sutherland Statutory Construction § 46:6 at 249 (7th ed. 2007).  The natural conclusion is that the "sentence" from which the Legislature intended the credits to be deducted is one of imprisonment. [9]  Thus, the plain language of § 42-56-24 suggests that the only form of mitigation contemplated in that provision is a reduction of the amount of time that a defendant must spend incarcerated.

Rose acknowledges that his good-time credits reduced the amount of time that he spent in prison but argues that those credits entitle him to further mitigation of his sentence.  In particular,

---

[9]  In 2012, the Legislature amended G.L. 1956 § 42-56-24(a) to provide that prisoners convicted of certain enumerated offenses "shall not be eligible to earn time off their term or terms of incarceration for good behavior."  See P.L. 2012, ch. 150, § 1 (emphasis added).  This recent amendment suggests that our interpretation is consistent with the 2012 General Assembly's understanding of § 42-56-24(a).

he argues that, because his good-time credits resulted in his early release from the ACI, his twelve-year period of probation should have commenced and, consequently, ended that much sooner. In making this argument, he relies on the sentencing justice's pronouncement that his twelve-year term of probation would commence "upon release" from the ACI.

A Superior Court sentencing justice has the authority under G.L. 1956 § 12-19-8 to mitigate a defendant's sentence by "suspend[ing] the execution of the sentence, in whole or in part." When the sentencing justice orders that the execution of a defendant's sentence be suspended, "[t]he suspension shall place the defendant on probation[.]" Id. The sentencing justice may determine the length of time and the conditions of that probationary period. Although we have previously interpreted § 12-19-8 as affording a trial justice the discretion to determine when a prisoner's term of probation will commence, see Gonsalves v. Howard, 113 R.I. 544, 546, 324 A.2d 338, 340 (1974), we have also held that a sentencing justice's pronouncement about the commencement of probation will not be given effect to the extent that it conflicts with another statutory provision. See State v. Dantzler, 690 A.2d 338, 339, 342 (R.I. 1997) (citing Gonsalves, 113 R.I. at 547, 324 A.2d at 340-41, but refusing to give effect to trial justice's statement that probation would commence upon release when to do so would conflict with § 12-19-9).

In the instant case, if the sentencing justice's statement about the commencement of probation is given literal effect, Rose will complete his entire sentence in less than twenty years. At the time Rose was sentenced in 1994, the Legislature had mandated a twenty-year minimum sentence for those convicted of first-degree child molestation. See § 11-37-8.2, as enacted by P.L. 1984, ch. 59, § 2. For sexual offenses, our Legislature has prescribed specific penalties that take into consideration the age of the victims. See State v. Yanez, 716 A.2d 759, 764 (R.I.

- 8 -

1998). The minimum sentence provided in § 11-37-8.2 for first-degree child molestation reflects the tender age of the victim. See Yanez, 716 A.2d at 764. Legislatively imposed minima and maxima circumscribe a trial justice's sentencing authority. See State v. Holmes, 108 R.I. 579, 584, 277 A.2d 914, 917 (1971). In accordance with this principle, we have previously refused to construe a sentencing provision, even an ameliorative one, in a manner that would "authoriz[e] sentencing justices to impose a sentence less than that for which the Legislature ha[s] otherwise specifically provided." Id. Thus, we conclude that there is no authority which would allow the sentencing justice's words to effectively reduce the total length of Rose's sentence below the mandatory minimum.[10]

The rule of lenity does not compel a different conclusion. Rose suggested at oral argument that, to the extent there is any inconsistency between the statutory minimum sentence and the provisions for good time, the rule of lenity requires that the inconsistency be resolved in his favor. The rule of lenity applies when interpreting statutes that define "the substantive ambit of criminal prohibitions" and impose penalties. Bifulco v. United States, 447 U.S. 381, 387 (1980). The award of good-time credits involves "neither the substantive ambit of a criminal prohibition nor the penalty it impose[s]." Sash v. Zenk, 428 F.3d 132, 134 (2d Cir. 2005). As then-Court of Appeals Judge, now United States Supreme Court Justice Sotomayor explained

---

[10] Rose suggests that, because G.L. 1956 § 12-19-8 allows for the suspension of his sentence, the twenty-year minimum provided for in G.L. 1956 § 11-37-8.2 represents only his "potential" sentence of incarceration. The Legislature has expressly indicated when the sentence for a particular offense may not be suspended. See, e.g., G.L. 1956 § 12-29-5(c)(2); G.L. 1956 § 31-40-8(a). The Legislature has not imposed any such restriction on a trial justice's authority to suspend a sentence for first-degree child molestation. We therefore agree that § 11-37-8.2 does not require that Rose spend twenty years incarcerated at the ACI since § 12-19-8 clearly authorized the sentencing justice to suspend all or part of that twenty-year sentence. In this case, however, the combined length of time that Rose will spend incarcerated and on probation will fall below twenty years if the sentencing justice's words "upon release" are allowed to control. For this result, we find no authority.

when writing for the Second Circuit, "[t]he fact that the * * * administrative reward for compliance with prison regulations is a sentence reduction does not make that administrative reward part of the process of criminal sentencing." Id. We find this reasoning persuasive and agree with those courts which have declined to apply the rule of lenity to statutes awarding good time. See, e.g., Wright v. Federal Bureau of Prisons, 451 F.3d 1231, 1236 (10th Cir. 2006); Zenk, 428 F.3d at 134; Perez-Olivo v. Chavez, 394 F.3d 45, 53 (1st Cir. 2005) (Bureau of Prisons' "calculation of reductions in a sentence for [good time], * * * is not, strictly speaking, a 'criminal' statute, and thus we do not believe the rule of lenity would apply.").

In contrast, the mandatory minimum contained in § 11-37-8.2 clearly imposes a criminal penalty. We are nonetheless equally unable to apply the rule of lenity to this provision. Resort to the rule of lenity is only appropriate when the meaning of a criminal statute is ambiguous and therefore inappropriate "'when the legislative intent is clear.'" Such v. State, 950 A.2d 1150, 1158 (R.I. 2008). In § 11-37-8.2, our Legislature clearly and directly stated that the penalty for first-degree child molestation was to be no less than twenty years.

The dissent makes a similar argument that, in absence of a clear legislative prohibition, § 42-56-24 should be construed in Rose's favor. While there may be some intuitive appeal to the idea that silence should be interpreted in applicant's favor, we respectfully conclude that this argument overlooks the fact that a sentence may be composed of several parts. The dissent reads § 42-56-24, which is silent on probation,[11] as affording the DOC the authority to reduce the

---

[11] Our Legislature's silence about the commencement of probation in a split sentence may be contrasted with the pronouncements of the legislatures in several of our sister states. See, e.g., Conn. Gen. Stat. Ann. § 53a-31(a) (West 2012) (specifying that when probation "is preceded by a sentence of imprisonment with execution suspended after a period of imprisonment set by the court, it commences on the day the defendant is released from such imprisonment"); Fla. Stat. Ann. § 948.012(1) (West 2010) (when the court imposes a "split sentence" of incarceration followed by probation, "[t]he period of probation or community control shall commence

overall length of the split sentence imposed by the trial justice. Here, the trial justice sentenced Rose to a total of twenty years. While the Legislature in § 42-56-24 clearly gave the DOC the discretion to mitigate that sentence by providing for Rose's early release from the ACI, it did not endow the DOC with the power to modify the overall length of a judicially imposed sentence in the manner that the dissent suggests. Indeed, we doubt whether the General Assembly could lawfully direct the DOC to make such a reduction. While the executive branch may execute a sentence, the power to reduce the length of a sentence imposed by a justice of the Superior Court is a judicial one. See Rule 35 of the Superior Court Rules of Criminal Procedure. As a judicial power, it may not be exercised by the Legislature, either directly or indirectly. See Taylor v. Place, 4 R.I. 324 (1856).

Lastly, we remain unconvinced by Rose's suggestion that the refusal to reduce his sentence below twenty years unlawfully converts his good-time credits into "additional" probation. We cannot accept Rose's characterization of his release on good time as the imposition of an added burden. We have consistently explained that "the terms and conditions inherent in the * * * privilege of probation * * * come into existence at the very moment that a sentence that includes probation is imposed," even before the formal commencement of probation. Dantzler, 690 A.2d at 339 (citing State v. Jacques, 554 A.2d 193, 195 (R.I. 1989)).

immediately upon the release of the defendant from incarceration, whether by parole or gain-time allowances"); Md. Code Ann., Crim. Proc. § 6-225(b)(2) (LexisNexis 2008) ("If a sentence of imprisonment is imposed and a part of it is suspended with the defendant placed on probation, the court may impose as a condition of probation that the probation begin on the day the defendant is released from imprisonment."). Similarly, in the federal system, which has a system of "supervised release," Congress has directed that "the terms of supervised release commence on the day the person is released from imprisonment * * *." 18 U.S.C. § 3624(e). At least one federal court has relied on this language to hold that good-time credits which accelerate a federal prisoner's release from incarceration also accelerate the end date of his period of supervised release. See United States v. Lynch, 114 F.3d 61 (5th Cir. 1997). Our Legislature has issued no such directive.

- 11 -

Those implied conditions to keep the peace and be of good behavior therefore apply while a defendant is in the ACI, such that his or her probation may be revoked for a violation of those conditions which occurs before the start of his formal probationary period. See id. at 342. Accordingly, even without any good-time credits, Rose would have been obligated to keep the peace and be of good behavior, or else risk being violated, for the full eight years preceding the formal commencement of his probation. Through legislative grace, Rose spent one and one-half of those eight years on the street rather than in the ACI. The fact that he was still obligated to abide by the same conditions to keep the peace and be of good behavior for that period of time presents no "additional" hardship. Regardless of whether the strings attached are implied or formal, we view the fact that Rose was allowed to spend those eighteen months outside the walls of the ACI as an act of leniency and not as the imposition of an additional burden.

**B**

**Credit for Time Served Under § 12-19-2(a)**

We next turn our attention to Rose's contention that the trial justice erred in failing to advance the end date of his probationary term by an amount of time equal to that which he spent confined while awaiting disposition of his case. Rose argues that he was entitled to such an adjustment under the so-called "dead time" provisions of § 12-19-2(a) which state:

> "(a) Whenever it is provided that any offense shall be punished by * * * imprisonment, the court imposing punishment may, in its discretion, select the * * * term within the limits prescribed by law; provided if the punishment to be imposed is imprisonment, the sentence or sentences imposed shall be reduced by the number of days spent in confinement while awaiting trial and while awaiting sentencing * * *."

The phrase "dead time" refers to the period of time spent in jail that ordinarily cannot be used to determine a prisoner's eligibility for parole. State v. Winston, 105 R.I. 447, 454, 252 A.2d 354,

358 (1969). As we have previously explained, § 12-19-2 represents the Legislature's "benevolent effort to assist the person who, because of an inability to make bail, [has] been cast into a sort of limbo" where his or her "time spent awaiting trial or sentence [can]not be credited towards any future parole." State v. Ilacqua, 765 A.2d 822, 824 (R.I. 2001) (quoting State v. Skirvin, 113 R.I. 443, 446, 446 n.1, 322 A.2d 297, 299-300, 300 n.1 (1974)). The credit provided for in § 12-19-2(a) thereby ensures that "all persons sentenced to identical terms w[ill], apart from differentials arising out of allowances for 'good time' and/or parole, be deprived of their liberty for identical periods of time." Holmes, 108 R.I. at 584, 277 A.2d at 917.

Consonant with these legislative purposes, we have interpreted § 12-19-2(a) as entitling a defendant to credit towards a term of imprisonment but not to any adjustment of a probationary sentence. See State v. Bergevine, 883 A.2d 1158, 1159 n.1 (R.I. 2005) (mem.). In Bergevine, we specifically addressed whether § 12-19-2(a) authorizes a trial justice to advance the calendar dates of a defendant's sentence to account for the time that the defendant spent in pretrial confinement. On April 25, 1994, Bergevine received a ten-year suspended sentence with ten years probation. See Bergevine, 883 A.2d at 1158. Less than six months after the imposition of his sentence, he violated the terms of his probation and was ordered to serve five of the ten years. See id. He received credit, however, for approximately nine months that he had spent in community confinement while awaiting trial. See id. On January 7, 2004, Bergevine once again violated his probation. See id. He argued that he was no longer on probation at the time of the second alleged violation because the credit he received for time served made his ten-year sentence, including his probation, retroactive. See id. We decisively rejected Bergevine's argument, reasoning that § 12-19-2(a) did not make his probationary sentence retroactive but

- 13 -

"merely reduced the amount of time that the defendant had remaining to serve on the five-year term of incarceration * * *." Bergevine, 883 A.2d at 1159.

In acknowledgement of Bergevine's holding, Rose refrains from requesting that we "retro-date" his sentence. He argues nonetheless that his probationary period should have commenced and ended fifteen months earlier because his credit for time served caused him to be released from prison that much sooner. While Rose may intellectualize the situation differently than the defendant in Bergevine, the practical result that he seeks is the same. If we accept Rose's argument, his entire twenty-year sentence would effectively slide backwards such that both his term of incarceration and his period of probation would begin and end fifteen months earlier. We cannot countenance a result that we have previously forbidden simply because it is painted in different terms. Rose acknowledges that, in accordance with § 12-19-2(a), his term of imprisonment was shortened by the amount of time that he spent awaiting disposition of his case. We do not believe that § 12-19-2(a) entitles him to any further reduction of his sentence.

Accordingly, we reach the same conclusion as the hearing justice that neither Rose's credits for good time nor his credits for time served entitled him to an acceleration of the end date of his probationary term. Although our conclusion rests on reasons that differ from those relied upon by the hearing justice, we may affirm a trial justice's decision so long as "there are other valid reasons to support the order or judgment appealed from." DeSimone Electric, Inc. v. CMG, Inc., 901 A.2d 613, 620-21 (R.I. 2006) (quoting Levine v. Bess Eaton Donut Flour Co., 705 A.2d 980, 984 (R.I. 1998)). We therefore hold that the hearing justice correctly denied Rose's application for postconviction relief.

Before concluding our discussion, we acknowledge that we were presented at oral argument with more than one hypothetical scenario concerning the possible effects of applying

- 14 -

credits to sentences other than the one that Rose received. In a sophisticated sentencing scheme, such as ours, there are many permutations of possible sentences. We confine ourselves, however, to our proper role of resolving only the questions presented to us in the instant appeal and leave any attempt to make a broader pronouncement to the Legislature.

## V

## Conclusion

For the foregoing reasons, we affirm the judgment of the Superior Court. The papers in this case may be returned to the Superior Court.

**Justice Flaherty with whom Justice Robinson joins, dissenting.** I respectfully dissent from the majority's opinion in this case. In my view, the entirety of the defendant's twenty-year sentence has been administratively reduced by "Good-Time" credits as provided by G.L. 1956 § 42-56-24 and by credit for time served awaiting disposition pursuant to G.L. 1956 § 12-19-2(a). Thus, he has fulfilled all of the terms of his sentence: the periods of incarceration and probation. It is my further opinion that the good-time credits and credit for time served should be applied to the entirety of Rose's sentence and not just the term of incarceration. Therefore, it is my conclusion that the majority effectively, but without citing any statutory authority to do so, has extended Rose's probation.

## "Good-Time" Credits

This Court has not discussed previously the interplay between mandatory minimum sentencing and administrative deductions, such as good-time credits, and to me, the majority appears to be overly focused on the implausibility of a deduction if that results in a sentence that falls below the terms called for by a statutory minimum. The effect of the majority's opinion is

two-fold.  First, the majority, in effect, engrafts a new section onto the statute, restricting the application of good-time credits should those credits result in a sentence that falls below a mandatory minimum.  Second, the majority, by necessary implication, would extend probation beyond that imposed by the sentencing justice.

I agree with the majority that § 42-56-24 is clear and unambiguous; therefore, "this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings."  State v. Hazard, 68 A.3d 479, 485 (R.I. 2013) (quoting Alessi v. Bowen Court Condominium, 44 A.3d 736, 740 (R.I. 2012)).  However, it is also true that this Court has made it crystal clear that, "[i]t is generally presumed that the General Assembly 'intended every word of a statute to have a useful purpose and to have some force and effect.'"  State v. Briggs, 58 A.3d 164, 168 (R.I. 2013) (quoting Curtis v. State, 996 A.2d 601, 604 (R.I. 2010)).  Indeed, we have held that the plain statutory language is the best indicator of legislative intent.  State v. Santos, 870 A.2d 1029, 1032 (R.I. 2005).  Although the majority correctly construes the statute as a legislatively-crafted means for the Department of Corrections (DOC) to reward good behavior and industriousness, it is my opinion that the majority is in error by concluding that the only "'sentence' from which the Legislature intended the credits to be deducted is one of imprisonment."

When we are called upon to resolve an inconsistency between two statutes that are in pari materia, "we construe them in a manner that attempts to harmonize them and that is consistent with their general objective scope."  State v. Oliveira, 882 A.2d 1097, 1111 (R.I. 2005).  I conclude that the most effective way to harmonize the apparent inconsistency between the application of good-time credits under § 42-56-24 and the mandate of the twenty-year statutory minimum pursuant to G.L. 1956 § 11-37-8.2 would be to apply earned good-time credits even if

that application would result in a sentence that falls below a statutory minimum.  This approach acknowledges the obligation of a trial justice to impose a statutory minimum sentence while nonetheless recognizing that administrative deductions that are provided for by statute can result in a defendant actually serving fewer years than the sentence initially imposed, as long as he has earned good-time credits.[12]

There is no argument that good-time credits impact directly the period of incarceration, but the thrust of Rose's appeal surrounds the effect that the statutory deduction should have on the entirety of his sentence.  The majority reasons that any deduction applies solely to the period of confinement, but, in my opinion, that interpretation is not consistent with the language of the statute.  The statute, as it read in 1994, provided that a specified period of time shall "be deducted from the term or terms of sentence of that prisoner * * * ."[13]  Random House defines "deduct" as "to take away, as from a sum or amount."  Random House Unabridged Dictionary 520 (2d ed. 1993).  Giving effect to every word of the statute, "the term or terms of sentence" should be read to equally include sentences with a term of twenty years with twenty years to serve, and those with multiple terms, as in this case, a twenty-year sentence with eight years to serve and twelve years suspended, with twelve years' probation. Moreover, at the time that Rose was sentenced, the Legislature limited the applicability of § 42-56-24 only to those persons imprisoned for "six (6) months or more" but not "sentenced to imprisonment for life."  On its

---

[12] Even though this case involved an offense carrying a statutory minimum, I would apply this same approach to sentencing in general.

[13] The defendant entered a plea of nolo contendere on March 14, 1994.

face, there is nothing in the statute that was in effect in 1994 that would limit the deduction of good-time credits from the whole of Rose's sentence.[14]

The majority arrives at its construction of legislative intent using logical inferences in two ways. First, it seems to me that the majority focuses on the word "sentence" and equates "sentence" with "imprisonment" to support its interpretation. Second, the majority points out that the General Assembly amended § 42-56-24 in 2012 to limit its application, by stating that certain offenses "shall not be eligible to earn time off their term or terms of incarceration for good behavior." See P.L. 2012, ch. 150, § 1. However, it is significant that the General Assembly did not amend the language of § 42-56-24(a). The language in that section is the same today as it was in 1994, and it still retains the phrase "term or terms of sentence." In my view, nothing cited to by the majority contravenes my conclusion that good-time credits reduce the entirety of sentence and not simply the period of incarceration.

In addition, I agree with the majority that the trial justice did not have the authority to impose a sentence below a statutory minimum and that his declaration at sentencing that probation would commence "upon release" could not have the effect of reducing Rose's sentence below twenty years. However, and significantly, the deduction in sentence emanated not from the trial justice, but from the General Assembly, when it enacted § 42-56-24.[15] When that statute

---

[14] The majority contends that the dissent seeks to construe G.L. 1956 § 42-56-24 in Rose's favor. I respectfully disagree. I am merely saying that I agree with Rose's argument that we should adhere to our jurisprudence with respect to statutory construction.

[15] The majority seems to suggest that there is a separation of powers or constitutional argument as to whether the General Assembly could direct the DOC to make reductions in sentence or whether the Executive Branch, even though cloaked with statutory authority, has the constitutional power to reduce the length of sentence. These arguments have not been a part of this case at any stage and were neither briefed nor argued by the parties. They should not now be introduced as mere dicta. Indeed, consideration of constitutional or separation of powers issues is utterly unnecessary in view of the fact that the majority decided this appeal by following traditional rules of statutory construction. See Grady v. Narragansett Electric Co., 962 A.2d 34,

- 18 -

was passed, the Legislature chose not to include a provision making good-time credits inapplicable should the result be a sentence less than a mandatory minimum. We generally presume that the Legislature knows what it is doing when it enacts statutes. See Brennan v. Kirby, 529 A.2d 633, 637-38 (R.I. 1987). At the time of Rose's conviction, the only people who were ineligible for good-time credits were those imprisoned for less than six months and those sentenced to life; there is no mention of mandatory minima. Indeed, when the General Assembly later amended § 42-56-24 to make certain offenses ineligible for good-time credits, it could have then made a blanket statement about the inapplicability of the good-time statute to offenses carrying a mandatory minimum, but it chose not to do so.[16]

Similar statutes in other jurisdictions expressly limit good-time credits in this way. In Delaware, certain statutes specifically provide that felons convicted for a crime carrying a statutory minimum sentence are not eligible for good-time credits. Woodward v. Department of Corrections, 415 A.2d 782, 783 (Del. Super. Ct. 1980) ("[T]he Legislature has also provided that specific minimum sentences for certain types of convicted felons are mandatory and shall not be subject to suspension and no person shall be eligible for probation or parole during such portion of such minimum term."), aff'd sub nom., Woodward v. State, 416 A.2d 1225 (Del. 1980). In Nebraska, the Supreme Court has held that the Legislature specifically intended to exclude those convicted under a mandatory minimum sentence from the good-behavior statute because the Legislature amended the law after a previous iteration of the statute allowed an offender to be

41 n.4 (R.I. 2009) (discussing "our usual policy of not opining with respect to issues about which we need not opine").

[16] In 2012, the General Assembly, for the first time, excluded certain offenses from eligibility for good-time credits. See P.L. 2012, ch. 152, § 1 ("(a) A person serving a sentence of a violation of [G.L. 1956 §§] 11-5-1 (where the specified felony is murder), 11-23-1, 11-26-1.4, 11-37-2, 11-37-8.1 or 11-37-8.3 shall not be eligible to earn time off their term or terms of incarceration for good behavior").

discharged prior to serving the minimum sentence specified by statute. Johnson v. Kenney, 654 N.W.2d 191, 194-95 (Neb. 2002). On the other hand, in Minnesota, where there is no such prohibition, the Supreme Court concluded that a statutory minimum sentence of twenty-five years could be reduced by that state's good-behavior statute. State v. Walker, 235 N.W.2d 810, 814 (Minn. 1975).

It is also my view that a fair reading of the majority opinion would result in the elimination of the application of good-time credits for defendants serving a mandatory minimum period of incarceration where a period of suspended sentence and a period of probation are not present. For example, a defendant serving a three-year statutory minimum with three years to serve for a third driving-under-the-influence offense under G.L. 1956 § 31-27-2(d)(3)(ii) would have been eligible for good-time credits under § 42-56-24. However, the majority's opinion could well eliminate good-time credits for this offender because the length of his sentence, after application of earned good-time credits, would fall below the prescribed minimum of three years. The General Assembly did not make that offense ineligible, but this Court appears poised to judicially amend the statute to do just that.

Indeed, the majority appears to reason that the application of good-time credits, under any scenario, even when there is no statutory minimum, could reduce only the period of incarceration because neither the General Assembly nor the Executive Branch has the authority to reduce the entire length of a judicially-imposed sentence. If administrative actions cannot modify the overall length of the sentence, taken to its logical conclusion, a defendant serving a five-year sentence without a probationary period would now incur a period of probation because he earned good-time credits. Whereas previously, this defendant would have "flattened," meaning he would have fulfilled all the obligations of his sentence, under the majority's

reasoning, he would now be required to serve a period of probation equal to each day of good-time credits earned.[17]

Finally, the majority does not sufficiently address the thorny issue of explaining defendant's status after good-time and time-served credits were applied and after he completed his parole, but before his probation began. When his parole ended in January 1999, Rose began serving his probation, which is now entering its sixteenth year, even though a twelve-year period of probation was imposed when he was sentenced. The majority provides no answer to this conundrum and essentially sanctions an extension of Rose's probation without legislative foundation.[18] In my opinion, the majority attempts to wriggle out of this maze by stating that the imposition of additional terms of probation is not an "added burden" because Rose could have spent that time incarcerated. The majority reasons that probation is better than prison, so there should be no complaint.[19] To support this position, the majority cites two cases that are readily distinguishable from the issues raised in this appeal.

First, the majority cites State v. Dantzler, 690 A.2d 338, 339 (R.I. 1997), to support the proposition that Rose would still be under an implied condition of good behavior for the eighteen

---

[17] To be fair, the majority is careful not to denominate the additional burden placed on Rose as probation, but it is difficult to see any other outcome. In State v. Dantzler, 690 A.2d 338, 339 (R.I. 1997), this Court held that those sentences with probationary periods have an accompanying implied condition of good behavior throughout the term of the sentence, which would seem to indicate that the additional burden imposed on our hypothetical defendant could be fairly described only as a period of probation, or perhaps parole. Unfortunately, this approach appears to create more questions than it addresses and also seemingly judicially amends § 42-56-24 to include a new administrative burden on the DOC.

[18] Indeed, at oral argument, the state conceded that Rose was "effectively on probation" before the end of his original eight-year period of incarceration.

[19] The majority seems to ignore the fact that, unless he violated his probation, there was no option to continue to incarcerate defendant under the statutory scheme for good-time credits. See § 42-56-24. Once good-time credits were earned, the DOC was obligated under the statute to apply them and release defendant. "Legislative grace" may have created these credits, but the majority's view on defendant's argument that he has received extended probation is not persuasive.

months of good-time credits he received.  In <u>Dantzler</u>, the defendant had escaped from prison and committed a sexual assault while at large.  <u>Id.</u> at 339.  Dantzler argued that he could not be violated because, due to the fact that he was serving a sentence of incarceration, he was not yet on probation when he committed the sexual assault.  <u>Id.</u>  But <u>Dantzler</u> is inapposite because Dantzler was not arguing that his probation had terminated but, quite the contrary, that it had not yet commenced.  <u>Id.</u>  Also, the defendant in <u>Dantzler</u> had not earned any good-time or time-served credits that could have reduced his sentence.  Rose, however, did earn those credits, and he has already served the required twelve years of probation.  Well beyond the terms of his sentence, defendant has been serving his probation for the past fifteen years.  The implied condition of good behavior may be ever present for the entirety of the sentence, but the very purpose of good-time credits is to reduce the duration of the entire sentence.

The majority also cites to <u>Lee v. Kindelan</u>, 80 R.I. 212, 95 A.2d 51 (1953), which is equally unpersuasive because in <u>Lee</u>, the Court considered the interplay of good-time credits and parole and held that reductions in sentence were not automatic.  <u>Id.</u> at 222, 95 A.2d at 55-56.  Lee argued that the applicable "Good Time Law" automatically reduced her sentence; however, this Court held that because Lee had not provided evidence that she had, in fact, earned the credits, she was not entitled to them.  <u>Id.</u> at 221-22, 95 A.2d at 55.  The Court indicated that the "Good Time Law" in <u>Lee</u> would have reduced the period of incarceration, but only to allow a defendant to begin parole, which was a conditional grant of liberty and not a reduction in the sentence.  <u>Id.</u> at 222, 95 A.2d at 56.  Not only did the defendant in <u>Lee</u> fail to demonstrate that she had earned any good-time credits, but she was seeking good-time credits so that she could be placed on parole, not probation.  <u>Id.</u> at 215-16, 95 A.2d at 52-53; <u>see</u> <u>Curtis</u>, 996 A.2d at 605 (discussing that a parolee is at liberty while on parole "during the remainder of his or her term of

sentence upon any [reasonable] terms and conditions"). This case bears little resemblance to Lee because Rose did earn good-time credits, which, in my opinion, should have been applied to the entirety of the sentence.

The majority's reasoning would seem to support the notion that Rose would have eighteen months remaining under the implied condition of good behavior without the administrative requirements of probation.[20] As if anticipating this inconsistency, the majority states that "[r]egardless of the strings attached," Rose was not burdened, no matter what his status was upon the completion of his parole. This declaration ignores our existing holdings on extensions of probation. We previously have held that the state and the defendant may not enter into an agreement to extend the defendant's period of probation beyond that period imposed by the sentencing justice. State v. Traudt, 679 A.2d 330, 331 (R.I. 1996). We have also held that a trial justice is not cloaked with the authority to extend a defendant's period of probation because the statute does not grant this specific power. State v. Rice, 727 A.2d 1229, 1231 (R.I. 1999). Further, we have stated that the trial justice does not possess the statutory power to amend a sentence and that he is "bound by the terms of that sentence." Id. The majority now appears to hold that this Court may extend a defendant's probation. However, the majority cites no

---

[20] According to the DOC's website those persons on probation must satisfy the following requirements:

> "Probationers are supervised by a DOC Probation & Parole Officer. * * * Everybody on probation must follow the general conditions of probation, including reporting to the [probation officer] as required; not breaking any laws; not traveling or moving out of Rhode Island without advance approval; advising the [probation officer] of any change of address immediately; and so on." Department of Corrections, Probation and Parole FAQ <http://www.doc.ri.gov/probation/faq.php> (last visited Feb. 7, 2014).

- 23 -

authority, judicial or legislative, to support its position that defendant's period of probation may be extended beyond the twelve-year period fixed by the trial justice.

In my opinion, this Court also lacks the statutory authority to extend probation. The common application of the word "deduct" from § 42-56-24 would resolve this apparent paradox and provide the most just result for defendant. Deducting the good-time credits from the entirety of Rose's sentence, just as the General Assembly has mandated, would remove eighteen months from the twenty-year sentence and not result in an unanticipated extension of probation. If, as discussed below, defendant's entire sentence is further reduced by credits for time served, Rose will have served exactly the sentence that the intersecting statutes intended for him to serve: both the period of incarceration and the period of probation imposed by the trial justice.

**Credit for Time Served**

I also depart from the majority's calculation of credit for time served under § 12-19-2. The Court's holding today counters our previous pronouncements about the purpose of the statute regarding credit for time served, which was meant to result in equal time for an equal sentence to balance out the situation of the person who can make bail and the person who cannot. As cited by the majority, the statute rectifies this inequity by ensuring that "all persons sentenced to identical terms [will] * * * be deprived of their liberty for identical periods of time." See State v. Holmes, 108 R.I. 579, 584, 277 A.2d 914, 917 (1971). In Holmes, 108 R.I. at 584, 277 A.2d at 917, we discussed the consequences of administrative reductions that result when credit for time served conflicts with judicial sentencing authority. In Holmes, the Court used the example of defendants A and B who both received a five-year mandatory minimum sentence, but defendant A had served already one year in pretrial confinement. Id. at 583, 277 A.2d at 916. The Court concluded that the trial justice would be required to sentence each defendant to at least

five years, but that the DOC would have the authority to release defendant A one year earlier pursuant to § 12-19-2. Holmes, 108 R.I. at 585, 277 A.2d at 917. Therefore, the Court concluded, the application of the statute resulted in a sentence below the statutory minimum, but that this reduction was administrative, not judicial. Id.

The majority notes that we have not previously allowed any adjustment of a probationary period when credit for time served is applied, and, in so reasoning, it relies almost exclusively upon an order of this Court, State v. Bergevine, 883 A.2d 1158, 1159 n.1 (R.I. 2005) (mem.). However, in my judgment, the footnote cited by the majority from Bergevine does not support the notion that credit for time served is inapplicable to probationary sentences. Indeed, it says that "[t]his provision [of § 12-19-2(a)] * * * is absolutely silent about such credit applying towards a probationary sentence or rendering a defendant's sentencing date retroactive." Bergevine, 883 A.2d at 1159 n.1. The defendant in Bergevine was seeking to have his time-served credits be applied retroactively in a creative effort to avoid being violated for a subsequent offense. However, acceptance of Bergevine's argument would have created the farcical result of the defendant being on probation even before he had been sentenced. Id. at 1158. In contrast, Rose argues that he be required to serve only the amount of probation to which he was sentenced after his release from incarceration. The majority holds that Bergevine has already decided this issue, no matter how Rose "intellectualize[s]" it, but I do not believe Bergevine rings with such clarity. Should this Court choose to now hold that the statute prevents time served from being applied to probationary sentences, it certainly may. However, in my opinion, this is plowing upon new ground because our narrow holding in Bergevine did not come to that conclusion.

To undergird its holding, the <u>Bergevine</u> Court appealed to common sense by quoting Justice William O. Douglas, who authored <u>Peak v. United States</u>, 353 U.S. 43, 46 (1957). <u>Bergevine</u>, 883 A.2d at 1159 ("That seems to us to be the common sense of the matter[,] and common sense often makes good law."). In my view, however, common sense would dictate that whether Rose was on bail prior to trial or confined, his sentence should be twenty years minus any earned good-time credits. The majority's holding, in my opinion, results in Rose serving twenty-one years and three months simply because he was held prior to trial. Incarcerated or serving probation with the suspended sentence hanging over his head like the sword of Damocles, defendant nevertheless has served twenty years. As I see it, Rose is simply asking this Court to recognize that to which he is entitled under a plain reading of the law.

As is the case with § 42-56-24, § 12-19-2 does not bar the application of credit for time served if that application would result in an offender serving less than a statutory minimum. In fact, we have held that credit for time served was specifically applicable. <u>See</u> <u>Holmes</u>, 108 R.I. at 585, 277 A.2d at 917. Although § 12-19-2 employs the term "reduced" instead of "deducted" as does § 42-56-24, this is a distinction without a difference. The majority's holding effectively requires Rose to make up the fifteen months he served at the Adult Correctional Institutions awaiting disposition by extending his probation, an extension that the statute simply does not authorize this Court to do. In my opinion, the outcome Rose seeks is exactly what the General Assembly designed. Rose's period of incarceration was reduced, and he served the twelve years of probation foisted upon him, which, with good-time credits, results in the completion of his sentence thirty-three months earlier than if he had been released on bail and had not earned good-time credits. This result not only appeals to common sense and is the most just, it also conforms with our existing case law and resolves the majority's unexplained foray into the limbo created

by the inability to explain Rose's status after his parole ended, but before his probation was supposed to start.

For the foregoing reasons, I respectfully dissent from the majority opinion in this case.



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**      Alexander Rose v. State of Rhode Island.

**CASE NO:**           No. 2012-129-Appeal.
                       (PM 10-5941)

**COURT:**             Supreme Court

**DATE OPINION FILED:**  February 24, 2014

**JUSTICES:**          Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**        Associate Justice Gilbert V. Indeglia

**SOURCE OF APPEAL:**  Providence County Superior Court

**JUDGE FROM LOWER COURT**:

                       Associate Justice Kristin E. Rodgers

**ATTORNEYS ON APPEAL:**

                       For Applicant:  Janice M. Weisfeld
                                       Office of the Public Defender

                       For State:  Lauren S. Zurier
                                   Department of Attorney General